1
2
3
4
5

ELISE R. SANGUINETTI, SBN 191389
JAMIE G. GOLDSTEIN, SBN 302479
ARIAS SANGUINETTI STAHLE & TORRIJOS
555 12th Street, Suite 1230
Oakland, CA  94607
Telephone: (510) 629-4877
Facsimile:  (510) 291-9742

6
7

Attorneys for Plaintiffs
Brandon Villarreal and James Gregory

8

9

**UNITED STATES DISTRICT COURT**

10

**NORTHERN DISTRICT OF CALIFORNIA**

11

12
13
14

BRANDON VILLARREAL, a minor, by and
through his guardian ad litem, DONALD
VILLARREAL and  JAMES GREGORY,
individually and as the Successor in Interest of
the Estate of Larra Ann Gillis,

15

Plaintiffs,

16

v.

17
18
19
20
21
22
23
24

COUNTY OF MONTEREY; SHERIFF STEVE
BERNAL, in his individual and official capacity;
DEPUTY J. MENDOZA); OFFICER P.
SANCHEZ; DEPUTY WONG; OFFICER
ANNA ROCAMORA; DEPUTY DOUGLAS
RAARUP; CITY OF MARINA; BOARD OF
TRUSTEES OF THE CALIFORNIA STATE
UNIVERSITY; OFFICER ROBIN LELAND;
CORPORAL CAROLYN PELIOVA;
CORPORAL DANIEL ANDRADA;
CALIFORNIA FORENSIC MEDICAL
GROUP; TAYLOR FITHIAN, M.D.; LORI
EDWARDS, R.N. and DOES 1 to 100, inclusive,

Defendants.

25
26
27
28

Case No.:

**COMPLAINT FOR DAMAGES**

1. **Violations of Civil Rights (Fourth
   Amendment – Excessive Force);**
2. **Failure to Provide Medical Care
   (Fourteenth Amendment);**
3. **Failure to Protect from Harm
   (Fourteenth Amendment)**
4. **Deprivation of Substantive Due
   Process (First and Fourteenth
   Amendments);**
5. **Failure to Furnish/Summon
   Medical Care;**
6. **Medical Malpractice**
7. **Negligent Supervision, Training,
   Hiring, Retention;**
8. **California Civil Code § 52.1;**
9. **Battery**
10. **Wrongful Death;**
11. **Negligence**

**DEMAND FOR JURY TRIAL**

-1-
**COMPLAINT FOR DAMAGES**

**INTRODUCTION**

1.     This matter arises from an initial stop and arrest of Larra Gillis, decedent, (hereinafter "Ms. Gillis") in the early morning hours on December 4, 2015.  At that time, California State University Police Monterey Bay (hereinafter "CSUMB") was patrolling Marina City, California.  Ms. Gillis was reported to have been walking in and out of traffic.  At the time of the arrest, Ms. Gillis was forcefully tripped to the ground and suffered injuries to her head as well as injuries to her hands.  Ms. Gillis also suffered injuries to her wrists as a result of the handcuffs being too tight.  Ms. Gillis was transported to Monterey County Jail where she was booked and put in a safety cell.  At the time of Ms. Gillis' arrest and booking, it was clear that she needed medical attention as she had multiple abrasions and was in an altered state due to the ingestion of drugs and/or psychological ailments.  Despite Ms. Gillis' clear need for help based on her appearance and behavior, which included her repeatedly shouting "help me," no medical attention was provided.  Ms. Gillis remained in the safety cell with no food and only one cup of water for the next twenty-eight (28) hours until she was found nearly unconscious and covered in feces.  She was finally transported to Natividad Hospital on December 5, 2015 at approximately 12:25 pm. She was suffering from sepsis, severe dehydration and kidney failure.  Ms. Gillis was intubated and never regained consciousness.  She died on December 19, 2015.

2.     James Gregory, individually and as the administrator of the Estate of Larra Gillis and Brandon Villarreal, a minor, by and through his Guardian ad Litem, Donald Villarreal, bring this action for damages against Defendants for civil rights violations, deliberate indifference, medical malpractice, battery, wrongful death and negligence that caused the suffering and ultimate death of Ms. Gillis and the losses of Ms. Gillis' children James Gregory and Brandon Villarreal.

**JURISDICTION**

3.     This Complaint seeks damages for violations of the civil rights privileges, and immunities guaranteed by the First and Fourteenth Amendments of the United States Constitution pursuant to 42 U.S.C. §§ 1983 and 1988 and for violations of California state law.

4.     This Court has jurisdiction over this lawsuit pursuant to 28 U.S.C. § § 1331 and

1343.

5.    This Court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1376, because the claims form part of the same case or controversy arising under the United States Constitution and federal law.

## VENUE

6.    Plaintiffs' claims arose in the County of Monterey, California. Venue therefore lies in the Northern District of California pursuant to 28 U.S.C. § 1391(b)

7.    Rule 3 of the Federal Rules of Civil Procedure and Local Rule 3-2(e) authorize assignment to this division because a substantial part of events or omissions giving rise to Plaintiffs' claims occurred in Monterey County, which is served by this division.

## PARTIES

8.    Plaintiff BRANDON VILLARREAL, a minor, by and through his guardian ad litem, Donald Villarreal, is and all times mentioned herein, a resident of County of Monterey, State of California.

9.    Plaintiff BRADON VILLARREAL, son of Larra Ann Gillis, brings these claims individually for violations of civil rights under the First and Fourteenth Amendments and California State law.

10.    At the time of death, Larra Ann Gills was a citizen of the United States of America, and a resident of the County of Monterey, State of California.  The survival causes of action in this matter are based on violations of Larra Ann Gillis' rights under the First and Fourteenth Amendment, and of violations of California state law.

11.    Plaintiff, JAMES GREGORY, is and at all time mentioned herein, a resident of County of Monterey, State of California.

12.    Plaintiff JAMES GREGORY brings this action individually and as the Successor in Interest of the Estate of Larra Ann Gillis pursuant to California Code of Civil procedure §§ 377.10, *et. seq*.

13.    Plaintiff JAMES GREGORY, son of Larra Ann Gillis, brings these claims individually for violations of civil rights under the First and Fourteenth Amendments and

**COMPLAINT FOR DAMAGES**

California State law.

14.    Defendant COUNTY OF MONTEREY is a public entity, duly organized and existing under the laws of the State of California. Under its authority, Defendant County of Monterey operates and manages the Monterey County Jail and is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the Monterey County Sheriff's Department and Monterey County Jail, and each entity's respective employees and/or agents. Monterey County Sheriff's Department operates the Monterey County Jail, and is and was responsible for ensuring the provision of emergency and medical services to all Monterey County Jail inmates.

15.    Defendant SHERIFF STEVEN BERNAL (hereinafter "Bernal") is and was at all times mentioned herein the Sherriff of the County of Monterey, the highest position in the Monterey County Sheriff's Department. As Sheriff, Defendant Bernal is and was responsible for hiring, screening, training, retention, supervision, discipline counseling, and control of all Monterey Sheriff's Department custodial employees and/or agents. Defendant Bernal is and was charged by law with the administration of the Monterey County Jail, with the assistance of a small group of executive officers. Defendant Bernal also is and was responsible for the promulgation of the policies and procedures and allowance of the practices/customs pursuant to which the acts of the Monterey County Sheriff's Department alleged herein were committed. Defendant Bernal is being sued in his individual and official capacities.

16.    Defendant DEPUTY J. MENDOZA, first name unknown, (hereinafter "MENDOZA") is and was at all times mentioned herein a police officer and employee of Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within the scope and course of his employment.

17.    Defendant OFFICER P. SANCHEZ, first name unknown, (hereinafter "SANCHEZ") is and was at all times mentioned herein a police officer, supervisor and employee of Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within the scope and course of his employment.

18.    Defendant DEPUTY DOUGLAS RAARUP, (hereinafter "RAARUP"), is and was

at all times mentioned herein a police officer and employee of Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within the scope and course of his employment.

19.     Defendant DEPUTY WONG, first name unknown, (hereinafter "WONG") is and was at all times mentioned herein a police officer and employee of Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within the scope and course of his employment.

20.     Defendant OFFICER ANNA ROCAMORA, (hereinafter "ROCAMORA") is and was at all times mentioned herein a police officer and employee of Defendant COUNTY OF MONTEREY and in doing the acts hereinafter described, acted within the scope and course of her employment.

21.     Defendants MENDOZA, SANCHEZ, RAARUP, WONG and ROCAMORA are hereinafter collectively referred to as "MONTEREY OFFICERS"

22.     Defendant MARINA CITY is a municipality duly organized and existing under the laws of the State of California. Marina City at all relevant times contracted with Defendant BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY to provide police services for Marina City.

23.     Defendant BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY (hereinafter "CSU") is the State of California acting in its higher education capacity.  Defendant CSU is a public entity organized and existing under the laws of the State of California.

24.     Defendant CSU provides police service through its University Police, which include police service and officers at the California State University Monterey Bay, (hereinafter "CSUMB").  At all relevant times Defendant CSU was an agent of Defendant Marina City and provided police services for Marina City.

25.     Under its authority Defendant CSU is and was at all relevant times mentioned herein responsible for the actions and/or inactions and the policies, procedures and practices/customs of the CSUMB police department and its respective employees and/or agents.

**COMPLAINT FOR DAMAGES**

26.     Defendant OFFICER ROBIN LELAND (hereinafter "LELAND") is and was at all relevant times a police officer and employee of CSUMB Police Department and in doing the acts hereinafter described, acted within the scope and course of her employment.

27.     Defendant CORPORAL CAROLYN PELIOVA, (hereinafter "PELIOVA"), is and was at all relevant times a police officer and employee of CSUMB Police Department and in doing the acts hereinafter described, acted within the scope and course of her employment.

28.     Defendant CORPORAL DANIEL ANDRADA, (hereinafter "ANDRADA"), is and was at all relevant times a police officer and employee of CSUMB Police Department and in doing the acts hereinafter described, acted within the scope and course of his employment.

29.     Defendants LELAND, PELIOVA and ANDRADA are hereinafter collectively referred to as "CSUMB OFFICERS".

30.     Defendant CALIFORNIA FORENSIC MEDICAL GROUP (hereinafter "CFMG"), is a California corporation headquartered in Monterey, California. CFMG is a private correctional health care provider that services approximately 65 correctional facilities in 27 California counties. The County of Monterey contracts with CFMG to provide medical, mental health, and dental services for the Monterey County Jail. At all times relevant, CFMG was responsible for the medical services provided to Ms. Gillis during her detention in the Monterey County Jail.

31.     Defendant TAYLOR FITHIAN, M.D.(hereinafter "FITHIAN"), is and was at all times relevant, a physician employed by CFMG and in doing the acts hereinafter described, acted within the course and scope of his employment.  Defendant FITHIAN is also the president and medical director of CFMG.

32.     Defendant LORI EDWARDS, (hereinafter "EDWARDS") is and was at all times mentioned herein a registered nurse and employee of Defendant CFMG and in doing the acts hereinafter described, acted within the scope and course of her employment.

33.     Plaintiffs are informed and believe and thereon allege that at all times relevant to this complaint, and prior to and including the date of the incident, Defendants DOES 1 through 25 and each of them, are and were employees, agents, servants and/or contractors of Defendant

**COMPLAINT FOR DAMAGES**

MARINA CITY whose actions and inactions caused or contributed to the negligent acts claimed herein, violations of Ms. Gillis' civil rights, wrongfully caused her death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct.  Plaintiffs' further allege Defendants DOES 1 through 25, and each of them, violated Plaintiffs' First and Fourteenth Amendment rights and rights under California state law.  Plaintiffs further allege that Defendants DOES 1 through 25, and each of them, was responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police department employees, agents, servants and/or contractors involved in the conduct alleged herein.

34.    Plaintiffs are informed and believe and thereon allege that at all times relevant to this complaint, and prior to and including the date of the incident, Defendants DOES 26 through 50 and each of them, are and were employees, agents, servants and/or contractors of Defendant CSU whose actions and inactions caused or contributed to the negligent acts claimed herein, to the violations of Ms. Gillis' civil rights, wrongfully caused her death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct.  Plaintiffs' further allege Defendants DOES 26 through 50, and each of them, violated Plaintiffs' First and Fourteenth Amendment rights and rights under California state law.  Plaintiffs further allege that Defendants DOES 26 through 50, and each of them, was responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police department employees, agents, servants and/or contractors involved in the conduct alleged herein.

35.    Plaintiffs are informed and believe and thereon allege that at all times relevant to this complaint, and prior to and including the date of the incident, Defendants DOES 51 through 75 and each of them, are and were employees, agents, servants and/or contractors of Defendant COUNTY OF MONTEREY whose actions and inactions caused or contributed to the negligent acts claimed herein, to the violations of Ms. Gillis' civil rights, wrongfully caused her death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct. Plaintiffs' further allege Defendants DOES 51 through 75, and each of them, violated Plaintiffs' First and Fourteenth Amendment rights and rights under California state law.  Plaintiffs further allege that Defendants DOES 51 through 75, and each of them, was responsible for the hiring,

**COMPLAINT FOR DAMAGES**

screening, training, retention, supervision, discipline, counseling and control of medical and mental health, jail custody and police department employees, agents, servants and/or contractors involved in the conduct alleged herein.

36.     Plaintiffs are informed and believe and thereon allege that at all times relevant to this complaint, and prior to and including the date of the incident, Defendants DOES 76 through 100 and each of them, are and were employees, agents, servants and/or contractors of Defendant CFMG whose actions and inactions caused or contributed to the negligent acts claimed herein, to the violations of Ms. Gillis' civil rights, wrongfully caused her death, and/or encouraged, directed, enabled and/or ordered other defendants to engage in such conduct.  Plaintiffs' further allege Defendants DOES 76 through 100, and each of them, violated Plaintiffs' First and Fourteenth Amendment rights and rights under California state law.  Plaintiffs further allege that Defendants DOES 76 through 100, and each of them, was responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of medical and mental health employees, agents, servants and/or contractors involved in the conduct alleged herein.

37.     Defendants Bernal, Monterey Officers, Marina City and CSUMB Officers and Does 1 through 75, and each of them, engaged in the acts and omissions alleged herein under the color of state law.

38.     Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1 to 100 inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this Complaint to allege their true names and capacities when ascertained.

39.     Plaintiffs are informed and believe and thereon allege that at all times mentioned in this Complaint, Defendants were the agents, employees, servants, joint venturers, partners and/or co-conspirators of the other Defendants named in this Complaint and that at all times, each of the Defendants was acting within the course and scope of said relationship with Defendant.

**EXHAUSTION OF PRE-LAWSUIT PROCEDURES FOR STATE LAW CLAIMS**

40.     Plaintiffs timely filed governmental tort claims with Defendants County of Monterey, Marina City and CSU on May 13, 2016. Plaintiffs also advised of medical negligence claims against Defendant County of Monterey.

**COMPLAINT FOR DAMAGES**

41.     Defendant CSU rejected all claims on May 23, 2016.

42.     Defendant Marina City and County of Monterey did not respond to Plaintiffs filed claims.

43.     Plaintiffs advised Defendants CFMG and Fithian of the intention to bring medical negligence claims against them through correspondence dated June 27, 2016.

<u>**FACTS**</u>

**History of Inadequate Medical Care at Monterey County Jail**

44.     The County of Monterey and CFMG have a policy and practice of failing to provide adequate medical care to inmates at Monterey County Jail, and are deliberately indifferent to the fact that their failure to do so subjects inmates to substantial risk of unnecessary suffering, serious injury and death.

45.     The County of Monterey and CFMG have been on notice that their provision of medical care to inmates is inadequate and results in needless harm since at least 2007, when the Monterey County Sheriff's Office and the Monterey County Board of Supervisors hired an outside consulting firm to perform a needs assessment for the Jail.

46.     The independent assessment was updated in 2011 and found that the County of Monterey and CFMG's medical/health treatment spaces are not adequate for the rated beds and inmates held. *(See* Exhibit 1.)

47.     Moreover, the Assessment found that chronic understaffing hinders the County of Monterey's ability to provide medical care, classify and move inmates within the facility, maintain inmate safety and security, and transport inmates to and from outside agencies. (*See* Exhibit 1 at G.1-G.3, J.2-J.3).

48.     The County of Monterey and CFMG maintain insufficient numbers of health care professionals to provide adequate care to the more than 900 inmates. The available health care staff is insufficient to provide medical evaluations, monitoring, and follow-up care to inmates who are suffering from serious and chronic illnesses, or to treat inmates on an emergency basis. (See Exhibit 1 at EX. 6-7).

49.     Moreover, as early as April 15, 2013, prior to Ms. Gillis' death, the County of

**COMPLAINT FOR DAMAGES**

Monterey was again specifically put on notice of serious problems with detoxification and sobering treatment in the jail by a letter written by class counsel in the *Hernandez et. al.* v. *County of Monterey et al.* matter (Case No. 5:13-cv- 2354-PSG). (*See* Exhibit 2). *Hernandez* is a class action lawsuit seeking, *inter alia,* injunctive relief to address conditions in the Monterey County jail that violate the Eighth and Fourteenth Amendments, and the Americans with Disabilities Act. The letter from *Hernandez* class counsel specifically objected to the fact that defendants' agents and staff were employing a dangerous and punitive "detox protocol," refusing medications to inmates who then suffered from intense, untreated pain as well as powerful, dangerous and unnecessary withdrawal symptoms.

50.   In April 2015, the District Court presiding over the *Hernandez* matter found substantial evidence of practices at the jail that place detoxifying inmates at risk. Specifically, the court in *Hernandez* found the following deficiencies:

> Defendants use custody staff to perform intake screenings to identify those who might be at risk for withdrawal symptoms when they are first booked into the jail. While the jail's screening procedures do not specify who should decide if a newly admitted inmate should be placed in a sobering or detoxification cell, in practice custody officers also routinely make this decision. Medical staff is not responsible for initial evaluations and placement of persons into sobering or detoxification cells . . . [I]t is a "major problem" that correctional officers conduct intake screenings. 'Officers are not trained to identify persons at risk for withdrawal, to evaluate persons who appear to be intoxicated, or to make medical decisions with respect to isolation for this purpose. This should be done by medical professionals [,] not custody officers.
>
> The jail does not reliably monitor inmates as they detoxify. Though Defendants' policy requires that nurses consult with a physician if a patient displays anyone of eight abnormal signs . . . this does not happen. Though [a neutral expert] was told that physicians are supposed to see all withdrawing patients within 24 hours, [the expert] found this also did not happen. [The expert] concluded, "alcohol and other drug withdrawal syndromes are managed by officers and nurses without physician supervision."
>
> . . . The jail also practices a single drug protocol for alcohol, benzodiazepine and opiate withdrawal, even though these are distinct conditions requiring different medications and dosing periods for each. Under the protocol, nursing staff—not physicians—decide whether to medicate a withdrawing inmate. [A neutral expert] found that "[placing all individuals who are withdrawing into a single protocol will invariably result in inappropriate treatment for individual patients."

-10-

. . . CFMG's own policies provide that a nurse does not conduct an assessment until *after* custody staff has placed the inmate in the sobering cell and notified medical staff.

*See Hernandez* v. *Cty. of Monterey,* 110 F. Supp. 3d 929, 948-51 (N.D. Cal. 2015).

51.     To address these deficiencies, the District Court issued a preliminary injunction in April 2015, and ordered the County to file a plan to remedy these, and many other constitutional and statutory violations. The Court ordered, in relevant part, that the County's plan should include these elements:

    a.   Medical staff shall timely conduct the initial evaluation to determine if an inmate is intoxicated and/or suffering from withdrawal or at high risk for withdrawal;

    b.   Medical staff shall make the decision on who should be placed in a sobering cell and who should be transferred to the hospital to be treated for possible or actual withdrawal;

    c.   Medical providers (physicians, physicians assistants, and/or nurse practitioners) shall be timely involved in assessing and treating inmates potentially undergoing withdrawal, and non-provider medical staff shall timely refer to providers those inmates undergoing withdrawals when clinically indicated;

    d.   Detoxifying inmates shall be adequately monitored using the CIWA protocol or equivalent validated monitoring protocol, shall receive pharmacological treatment as indicated and be appropriately housed based on their clinical conditions;

    e.   Defendants shall develop separate treatment protocols for opiate, alcohol and benzodiazepine withdrawal…

       *Hernandez* v. *Cty. of Monterey,* 110 F. Supp. 3d 929, 959 (N.D. Cal. 2015).

**Ms. Gillis' Arrest and Death**

    **A.     Ms. Gillis' Family History**

52.     Ms. Gillis was born on January 7, 1968.  At the time of her death she was forty-seven (47) years old.  Prior to her death she had struggled with substance abuse for many years. Ms. Gillis also suffered from bipolar disorder.  She had been arrested on several occasions and was incarcerated from time to time.  While Ms. Gillis struggled with her addiction and illness, she was a good mother and wife.  Ms. Gillis and her partner Donald had been together many years at the time of her death.  Donald helped raise Ms. Gillis' son James Gregory who is twenty (20)

**COMPLAINT FOR DAMAGES**

years old.  Donald and Ms. Gillis also had a son together, Brandon Villarreal, who is fourteen (14) years old.

53.     Ms. Gillis was a loving and caring mother and worked hard to stay sober and make a life for her children and Donald.   She was a stay at home mom and provided what she could for James and Brandon.  She was a caring mother who loved her children dearly.

**B.     Ms. Gillis' Arrest**

54.     On December 4, 2015, Ms. Gillis was struggling with her addiction and left her house in the early morning hours.  Around 7:10 am she was in Marina City in the vicinity of Reservation Road and Crescent Avenue.  There had been reports that she was walking in and out of traffic and CSUMB police were dispatched.

55.     Defendant Leland responded to the call and confronted Ms. Gillis near a 7-11 gas station at 320 Reservation Road.  Ms. Gillis appeared to be under the influence as she had white foam around her mouth, burn marks on her lips and her pupils were dilated.  Defendant Leland attempted to grab Ms. Gillis, who was frightened and ran away.

56.     Defendant Leland called Defendants Peliova and Andrada and asked that they expedite their response time and advised where to find Ms. Gillis.  When Defendants Peliova and Andrada found Ms. Gillis, she was scared and screaming, "Please help me! I don't want to die!"

57.     Defendant Andrada grabbed Ms. Gillis' arm.  Ms. Gillis continued to scream in fear.  Defendant Andrada attempted to put Ms. Gillis' hands behind her back and when he was not successful, he tripped her and Ms. Gillis fell to the ground.  Ms. Gillis was five (5) feet four (4) inches and weighed approximately one hundred (100) pounds.

58.     Defendant Peliova then began pulling Ms. Gillis' arms out from under her.  When Ms. Gillis fell to the ground her arms were pinned under her.  Ms. Gillis was then handcuffed while she was faced down on the ground with her arms behind her back. Defendants Peliova and Andrada then brought Ms. Gillis towards the patrol vehicle.   At this time Defendant Leland arrived.

59.     During this time Defendant Andrada noted that Ms. Gillis was not comprehending what was occurring.  She was delusional.  Her pupils were dilated, she was pale and sweaty and

**COMPLAINT FOR DAMAGES**

her mouth was extremely dry with thick white saliva around her lips.  Ms. Gillis also had irregular and rapid breathing even after she had been sitting for a period of time.

60.     Upon arrival of Defendant Leland, Ms. Gillis was placed into the back of a patrol vehicle and Defendant Leland transported her to Monterey County Jail.

61.     Ms. Gillis arrived at Monterey County Jail and was booked by Defendant Rocamora at 8:15 am. At that time, based on Ms. Gillis' physical and mental condition she was showing clear signs of being under the influence. Moreover, Defendant County of Monterey was well aware that Ms. Gillis suffered from substance abuse and mental illness from her prior incarcerations. She also was suffering from lacerations to her head, hands and wrists.  Despite her clear need for medical attention, none was provided.  Defendant Mendoza, a deputy and not a medical provider, determined that Ms. Gillis should be put in restraints and placed in a safety cell. This was done at 8:13 am on December 4, 2015.

62.     Defendants County of Monterey and Bernal failed to have policies or procedures in place to properly care for inmates, including Ms. Gillis, who were in need of detoxification.

63.     Over the next twenty-eight (28) hours Ms. Gillis remained in the safety cell with no medical attention or food.  A single cup of water was given to her during this time.

64.     While Ms. Gillis was in the safety cell no physician ever came to evaluate her. Upon information and belief, Defendant Fithian was notified of Ms. Gillis' condition but did not evaluate her or see her.

65.     During the twenty-eight (28) hour period Defendant Monterey Officers, Defendant Edwards and nursing staff at the jail repeatedly acknowledged Ms. Gillis was acting erratic and yelling "help me," but they did not provide her medical attention.

66.     During the twenty-eight (28) hours Ms. Gillis at times was on her knees begging for help as well as laying on her side.

67.     On December 5, 2015, at 11:30 am, Ms. Gillis was found laying on her side covered in feces moaning and unresponsive.  A nurse contacted Defendant Fithian, who did not come to the cell to see Ms. Gillis.  Instead almost an hour later, nursing staff was advised by Defendant Fithian to send Ms. Gillis to the hospital for drug induced detoxification.

**COMPLAINT FOR DAMAGES**

68.     On December 5, 2015, at 12:25 pm, over twenty-eight (28) hours after she was booked into custody, an ambulance was called to take Ms. Gillis to the hospital.  At that time she was unresponsive and severely dehydrated.  Her blood glucose was 44, her oxygen saturation was in the 60s and she had agonal breathing.

69.     Ms. Gillis never regained consciousness and remained at Natividad Hospital until her death on December 19, 2015.

70.     As a result of Defendants' actions and inactions, Ms. Gillis died a wholly preventable death, suffering in pain, scared and alone.  Her children lost their mother and continue to experience this loss to this day.

## FIRST CLAIM FOR RELIEF

### Excessive Force in Violation of Fourth Amendment to the U.S. Constitution

### (Survival Action – 42 U.S.C. § 1983)

### (Against Defendants City of Marina, CSU, CSUMB Officers and Does 1-50)

71.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 70 as though fully set forth herein.

72.     The conduct complained of herein was undertaken pursuant to the policies, practices, and customs of the City of Marina, CSUMB Police Department, an agency of CSU, and City of Marina, and was sanctioned and approved by each of the individual named CSUMB Officers and Does 1 through 50.

73.     Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, acting under color of state law and through their policies, practices and customs, deprived Ms. Gillis of rights, privileges, and immunities secured by the Constitution and the laws of the United States under the Fourth Amendment by subjecting Ms. Gillis through their deliberate indifference or allowing others to subject her, to unreasonable, unnecessary, and excessive force by tripping her by both feet and causing her to fall to the ground when arresting her for an alleged non-violent crime and while she was scared and requesting help, and resulting in injuries to her head, arms and hands. Further unreasonable, unnecessary and excessive force was used when handcuffing Ms. Gillis and placing her in the police vehicle causing severe lacerations to her

**COMPLAINT FOR DAMAGES**

wrists.

74.     As a direct and proximate result of the conduct of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, Ms. Gillis was injured as set forth above, experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

75.     As a direct and proximate result of the conduct of Defendants' City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

76.     As a result of the injuries to Ms. Gillis, Plaintiffs have been injured and are entitled to compensatory and punitive damages against Defendants' City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them all according to proof at the time of trial.

77.     Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

## SECOND CLAIM FOR RELIEF

**Deliberate Indifference to Serious Medical Needs in Violation of the Fourteenth Amendment to the Constitution of the United States**

**(Survival Action – 42 U.S.C § 1983)**

**(Against Defendants County of Monterey, Sheriff Steve Bernal, Monterey Officers, California Forensic Medical Group, Taylor Fithian, M.D., Lori Edwards, R.N. and Does 51 – 100)**

78.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 77 as though fully set forth herein.

79.     Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100 and each of them, have inadequate policies, procedures, and practices for identifying inmates in need of medical treatment and providing appropriate medical treatment. Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards

**COMPLAINT FOR DAMAGES**

and Does 51 through 100 and each of them, also fail to appropriately train and supervise staff regarding the provision of treatment to inmates with medical issues.

80.     Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100 and each of them, have consistently demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate medical care to inmates in their jails. Defendants' County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100 and each of them, failure to correct their policies, procedures, and practices, despite longstanding and repeated notice of significant and dangerous deficiencies, evidences deliberate indifference in the provision of medical treatment.

81.     Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100 and each of them, were specifically on notice that Ms. Gillis was in need of urgent medical attention for severe drug withdrawal symptoms, bipolar disorder and injuries sustained after being tripped to the ground by CSUMB Officers and forcefully placed in the patrol vehicle.

82.     Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100 and each of them, failed to provide necessary medical treatment to Ms. Gillis while she was in their custody and care despite her obvious signs of medical distress.

83.     Defendants' County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100 and each of them, acts and/or omissions as alleged herein, including but not limited to their failure to provide Ms. Gillis with appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to inmates who require detoxification, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Ms. Gillis' serious medical needs, health and safety.

84.     As a direct and proximate result of the conduct of Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100 and each of them Ms. Gillis was injured as set forth above, experienced physical pain, severe emotional distress, and mental anguish, as well as loss of her life and other damages alleged herein.

**COMPLAINT FOR DAMAGES**

85.     As a direct and proximate result of the conduct of Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

86.     As a result of the injuries to Ms. Gillis, Plaintiffs have been injured and are entitled to compensatory and punitive damages against Defendants' County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them all according to proof at the time of trial.

87.     Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

### THIRD CLAIM FOR RELIEF

**Failure to Protect From Harm in Violation of the Fourteenth Amendment to the Constitution of the United States**

**(Survival Action – 42 U.S.C § 1983)**

**(Against All Defendants)**

88.     Plaintiffs re-alleges and incorporate by reference paragraphs 1 through 87 as though fully set forth herein.

89.     Each Defendant could have taken action to prevent unnecessary harm to Ms. Gillis but refused or failed to do so.

90.     Defendants Monterey County, Bernal, CFMG and Does 51 through 100, and each of them, failed to have minimally necessary policies and procedures concerning the adequate treatment of Ms. Gillis, whom they knew or should have known was in need of medical attention for her drug addiction and being injured at the time of her arrest.

91.     Defendants Monterey County, Steve Bernal, and CFMG have consistently demonstrated deliberate indifference to their constitutional obligation to provide minimally adequate medical care to inmates in their jails. Defendants' Monterey County, Steve Bernal, CFMG, and Does 51 through 100, and each of them, failure to correct their policies, procedures,

**COMPLAINT FOR DAMAGES**

and practices, despite longstanding and repeated notice of significant and dangerous deficiencies, evidences deliberate indifference in the provision of medical treatment.

92.     Defendants Monterey County, Bernal, Monterey Officers, CMFG, Fithian, Edwards and Does 51 through 100, and each of them, were specifically on notice that Ms. Gillis was in need of urgent medical attention for severe drug withdrawal symptoms and injuries sustained at the time of her arrest.

93.     Defendants Monterey County, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, failed to provide necessary medical treatment to Ms. Gillis while she was in their custody and care despite her obvious signs of medical distress.

94.     The acts and/or omissions of Defendants Monterey County, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, as alleged herein, including but not limited to their failure to provide Ms. Gillis with appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to inmates who require detoxification, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Ms. Gillis' serious medical needs, health and safety.

95.     Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, used excessive force in apprehending Ms. Gillis, and then failed to provide Ms. Gillis with medical attention notwithstanding their knowledge that Ms. Gillis was tripped to the ground, hit her head and had serious injuries to her head, arms, hands and wrists.

96.     Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, were specifically on notice that Ms. Gillis was in need of urgent medical attention for severe drug withdrawal symptoms and injuries sustained at the time of her arrest.

97.     Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, failed to immediately provide necessary medical treatment to Ms. Gillis while she was in their custody and care despite her obvious signs of medical distress.

98.     The acts and/or omissions of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, as alleged herein, including but not limited to their

**COMPLAINT FOR DAMAGES**

failure to provide Ms. Gillis with immediate and appropriate medical care, failure to promulgate appropriate policies and procedures in order to provide treatment to persons injured during arrests and who require detoxification, and failure to appropriately train and/or supervise their staff, constituted deliberate indifference to Ms. Gillis' serious medical needs, health and safety.

99.     Defendants were also on notice that Ms. Gillis suffered from drug addiction as she had previously been an inmate at the Monterey County Jail and their records advised of her drug addiction.  Further, Ms. Gillis repeatedly cried out for help to Defendants prior to and during her arrest, as well as once she was processed at the Monterey County Jail and then left in a safety cell for twenty-eight (28) hours.

100.    Defendants Monterey County, Bernal, CFMG and Does 51 through 100, and each of them, have failed to promulgate appropriate policies and procedures in order to provide treatment to inmates who require detoxification. Defendants Monterey County, Bernal, CFMG and Does 51 through 100, and each of them, also failed to create minimally necessary policies and procedures for ensuring that medical staff provided known substance users with adequate and necessary medical treatment. Lastly, Defendants Monterey County, Bernal, CFMG and Does 51 through 100, and each of them, failed to train and supervise medical staff to treat inmates who are detoxing or suffering withdrawal.

101.    Defendants' acts and/or omissions as alleged herein, including but not limited to their failure to follow a mandated and lifesaving treatment plan, their failed to create minimally necessary policies and procedures for ensuring arrested persons receive adequate medical treatment, their failure to create minimally necessary policies and procedures for ensuring that medical staff provided inmates who are detoxing with adequate and necessary medical treatment, and their failure to train and supervise medical staff to treat inmates with serious and life threatening illnesses, constituted deliberate indifference to Ms. Gillis' serious medical needs and safety.

102.    As a direct and proximate result of Defendants' conduct, Ms. Gillis experienced physical pain, severe emotional distress, and mental anguish, as well as loss of his life and other damages alleged herein.

103.    The aforementioned acts and/or omissions of Defendants were willful, wanton, malicious, and oppressive and thereby justifying an award to Plaintiffs.

104.    As a direct and proximate result of the conduct of Defendants, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

105.    As a result of the injuries to Ms. Gillis, Plaintiffs have been injured and are entitled to compensatory and punitive damages against Defendants, all according to proof at the time of trial.

106.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

**FOURTH CLAIM FOR RELIEF**

**Deprivation of Substantive Due Process Rights in Violation of First and Fourteenth Amendments to the Constitution of the United States – Loss of Parent/Child Relationship (42 U.S.C. § 1983)**

**(Against all Defendants)**

107.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 106 as though fully set forth herein.

108.    The aforementioned acts and/or omissions of Defendants in being deliberately indifferent to Ms. Gillis' serious medical needs, health and safety, violating Ms. Gillis' constitutional rights, and their failure to train, supervise, and/or take other appropriate measures to prevent the acts and/or omissions that caused the untimely and wrongful death of Ms. Gillis deprived Plaintiffs of their liberty interest in a parent-child relationship in violation of their substantive due process rights as defined by the First and Fourteenth Amendments to the United States Constitution.

109.    As a direct and proximate result of the aforementioned acts and/or omissions of Defendants, Plaintiffs suffered injuries and damages as alleged herein, including the loss of love, companionship, comfort, care assistance, protection, affection, society, moral support, training,

**COMPLAINT FOR DAMAGES**

guidance, and gifts of Ms. Gillis, as well as the loss of the value of Ms. Gillis' household services and financial support. Plaintiffs are further entitled to recover prejudgment interest.

110.    The aforementioned acts and/or omissions of Defendants Bernal, in his individual capacity, CSUMB Officers, Monterey Officers, CFMG, Fithian, Edwards and Does 1 through 100, and each of them, were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

111.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

**FIFTH CLAIM FOR RELIEF**

**Failure to Furnish/Summon Medical Care**

**(Survival Action – California State Law)**

**(Against All Defendants)**

112.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 111 as though fully set forth herein.

113.    Defendants owed Ms. Gillis a duty of care to provide her immediate medical care.

114.    The conduct of Defendants alleged herein, including but not limited to the fact that Defendants knew or had reason to know that Ms. Gillis was in need of immediate medical care and that Defendants failed to take reasonable action to summon or provide care, resulting in Ms. Gillis' death as alleged herein, violated California state law, including Cal. Govt. Code §§ 844.6 and 845.6.

115.    Defendants failed to evaluate, diagnose and treat Ms. Gillis' injuries related to her arrest and also failed to timely and appropriately respond to Ms. Gillis' obvious signs of medical distress over a twenty-eight (28) hour period while she was locked in a safety cell with no medical care or treatment despite her clear need for medical attention.  Ms. Gillis showed clear signs of drug withdrawal, however the signs were repeatedly ignored as were her direct pleas for help. Defendants repeatedly failed to address obvious signs of medical distress and ignored the duties of medical staff to treat and monitor Ms. Gillis' drug detoxification. Moreover, Defendants failed

-21-

**COMPLAINT FOR DAMAGES**

to conduct any health screenings, to take appropriate measures to treat Ms. Gillis' detoxification and to appropriately monitor her health.

116.    The alleged conduct of Defendants was committed with the course and scope of their employment.

117.    As a direct and proximate result of Defendants' breach, Ms. Gillis and Plaintiffs have suffered injuries and damages causing great pain and leading to Ms. Gillis' death, as alleged herein.

118.    As a direct and proximate result of the conduct of Defendants, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

119.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future. The aforementioned acts and/or omissions of Defendants Bernal, in his individual capacity, Monterey Officers, CSUMB Officers, CFMG, Fithian, Edwards and Does 1 through 100 were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs for exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

120.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

### SIXTH CLAIM FOR RELIEF

**Medical Malpractice**

**(Survival Actions – California State Law)**

**(Against Defendants County of Monterey, CFMG, Fithian, Edwards**

**and Does 51 through 100)**

121.    Plaintiffs re-allege and incorporate by reference paragraphs 1 though 120 as though fully set forth herein.

122.    Defendants County of Monterey, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, failed to comply with professional standards in the treatment of Ms. Gillis'

-22-

**COMPLAINT FOR DAMAGES**

serious medical illness by failing to evaluate, diagnose and treat injuries related to her arrest, ignoring repeated requests for help, failing to address obvious signs of medical distress and ignoring the duties of medical staff to treat and monitor her drug detoxification.  Furthermore, Defendants County of Monterey, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, failed to take appropriate measures to treat her detoxification and to appropriately monitor her health.

123.    Defendants County of Monterey, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, failed to appropriately supervise, review and ensure the competence of medical staff's provision of treatment of Ms. Gillis, and failed to enact appropriate standards and procedures that would have prevented such harm to her.

124.    The negligent conduct of Defendant Fithian, Edwards and Does 51 through 100, and each of them, was committed within the course and scope of their employment.

125.    As a direct and proximate result of the conduct of Defendants County of Monterey, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

126.    As a result of the injuries to Ms. Gillis, Plaintiffs have been injured and are entitled to compensatory and punitive damages against Defendants County of Monterey, CFMG, Fithian, Edwards and Does 51 through 100, all according to proof at the time of trial.

127.    The aforementioned acts and/or omissions of Defendants County of Monterey, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, were willful, wanton, malicious and oppressive and thereby justify an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such future conduct.

128.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

//.

//.

-23-

**COMPLAINT FOR DAMAGES**

**SEVENTH CLAIM FOR RELIEF**

**Negligent Supervision, Training, Hiring and Retention**

**(Survival Action – California State Law)**

**(Against Defendants County of Monterey, Bernal, City of Marina, CSU, CFMG**

**and Does 1-100)**

129.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 128 as though fully set forth herein.

130.    Defendants County of Monterey, Bernal, City of Marina, CSU, CFMG and Does 1 through 100, and each of them, had a duty to hire, supervise, train and retain employees and/or agents so that employees and/or agents refrain from the conduct and/or omissions alleged herein.

131.    Defendants County of Monterey, Bernal, City of Marina, CSU, CFMG and Does 1 through 100, and each of them, breached this duty, causing the conduct alleged herein. Such breach constituted negligent hiring, supervision, training and retention under the laws of the State of California.

132.    As a direct and proximate result of the failures of Defendants County of Monterey, Bernal, City of Marina, CSU, CFMG and Does 1 through 100, and each of them, Ms. Gillis endured pain, suffering, physical injury, and emotional distress prior to her death as alleged herein.

133.    As a direct and proximate result of the conduct of Defendants County of Monterey, Bernal, City of Marina, CSU, CFMG and Does 1 through 100, and each of them, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

134.    As a result of the injuries to Ms. Gillis, Plaintiffs have been injured and are entitled to compensatory and punitive damages against Defendants, all according to proof at the time of trial.

135.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

-24-

**COMPLAINT FOR DAMAGES**

**EIGHTH CLAIM FOR RELIEF**

**Cal. Civil Code § 52.1**

**(Survival Action – California State Law)**

**(Against Defendants City of Marina, CSU, CSUMB Officers and Does 1 – 50)**

136.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 135 as though fully set forth herein.

137.     The California Constitution Art. I § 13 and the United States Constitution Amendment IV, guarantee the right of persons to be free from arrests without probable cause, unreasonable searches and seizures and use of unnecessary and excessive force on the part of law enforcement officers. Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, by engaging in the wrongful conduct alleged herein, including but not limited to the use of unnecessary and excessive force at the time of the arrest of Ms. Gillis, denied the rights to Ms. Gillis either directly or through their deliberate indifference, thus giving rise to a claim for damages pursuant to Cal Civ. Code § 52.1.

138.     As a direct and proximate result of the conduct of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, Ms. Gillis and Plaintiffs suffered injuries and damages as alleged herein and are entitled to statutory damages under Cal. Civ. Code § 52, as well as compensatory damages, all according to proof at the time of trial.

139.     As a direct and proximate result of the conduct of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

140.     The aforementioned acts and/or omissions CSUMB Officers and Does 1 through 50 were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

141.     Plaintiffs have sustained a loss of interest on the value of all damages from the date

-25-
**COMPLAINT FOR DAMAGES**

they were incurred to the present, and said loss will continue into the future.

## NINTH CLAIM FOR RELIEF

### Battery

### (Survival Action – California State Law)

### (Against Defendants City of Marina, CSU, CSUMB Officers and Does 1 – 50)

142.     Plaintiffs re-allege and incorporate by reference paragraphs 1 through 141 as though fully set forth herein.

143.     Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, engaged in a battery of Ms. Gillis by grabbing her, tripping her forcefully to the ground and over tightening handcuffs, thereby touching her against her consent with an intent to harm her, where in fact Ms. Gillis was harmed by the conduct of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, and a reasonable person in Ms. Gillis' situation would have been offended.

144.     As a direct and proximate cause of the aforementioned acts of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, Ms. Gillis was injured as set forth above.

145.     As a direct and proximate result of the conduct of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, Ms. Gillis and Plaintiffs suffered injuries and damages as alleged herein.

146.     As a direct and proximate result of the conduct of Defendants City of Marina, CSU, CSUMB Officers and Does 1 through 50, and each of them, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and for the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental expenses, all according to proof at the time of trial.

147.     The injuries incurred by Ms. Gillis and Plaintiffs' entitle Plaintiffs' to compensatory and punitive damages according to proof as to Defendants CSUMB Officers and Does 1 through 50 and compensatory damages alone as to Defendants City of Marina and CSU, all according to proof at the time of trial.

**COMPLAINT FOR DAMAGES**

148.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

**TENTH CLAIM FOR RELIEF**

**Wrongful Death – California Code of Civil Procedure § 377.60**

**(Against Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 - 100)**

149.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 148 as though fully set forth herein.

150.    Ms. Gillis' death was a direct and proximate result of the aforementioned wrongful and/or negligent acts and/or omissions of Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them.

151.    Defendants County of Monterey Bernal, Monterey Officers, Does 51 through 100, and each of them, failed to summon medical care for Ms. Gillis despite her condition, and ultimately resulted in her death.

152.    Defendants CFMG, Fithian, Edwards and Does 51 through 100, and each of them, showed a deliberate indifference to the medical needs of Ms. Gillis, despite her serious need for medical attention. Their deliberate indifference to her medical needs caused Ms. Gillis' death.

153.    The acts and/or omission of Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them were a direct and proximate cause of Ms. Gillis' injuries and death.  As a direct and proximate result of Ms. Gillis' injuries and death, Plaintiffs' were injured as alleged herein.

154.    As a direct and proximate result of the wrongful and negligent acts and/or omissions of Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, Plaintiffs incurred expenses for funeral and burial expenses in an amount to be proved at the time of trial.

155.    As a direct and proximate result of the wrongful and negligent acts and/or omissions of Defendants County of Monterey, Bernal, Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them., Plaintiffs suffered the loss of love,

**COMPLAINT FOR DAMAGES**

companionship, comfort, care assistance, protection, affection, society, moral support, training, guidance, and gifts of Ms. Gillis, as well as the loss of the value of Ms. Gillis' household services and financial support. Plaintiffs are further entitled to recover prejudgment interest.

156.    Plaintiff Estate of Larra Gillis is entitled to recover punitive damages against Defendants Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, and each of them, who, with conscious disregard of Ms. Gillis' rights, failed to summon and provide Ms. Gillis with medical treatment meeting the professional standard of practice and failed to adhere to the legal mandates of prisoner supervision.

157.    The aforementioned acts of Defendants Monterey Officers, CFMG, Fithian, Edwards and Does 51 through 100, were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

158.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

## ELEVENTH CLAIM FOR RELIEF

### Negligence

### (Survival Actions – California State Law)

### (Against All Defendants)

159.    Plaintiffs re-allege and incorporate by reference paragraphs 1 through 158 as though fully set forth herein.

160.    Defendants and Does 1 through 100, and each of them, failed to comply with professional standards in the treatment of Ms. Gillis' serious medical illness by failing to provide her evaluation or treatment related to her injuries sustained at the time of her arrest, failing to appropriately assess and evaluate her medical needs, ignoring her repeated requests for help, failing to address obvious signs of medical distress, failing to provide appropriate medical treatment, failing to adopt the minimum policies, procedures, and training necessary to ensure identification or response to medical emergencies, and ignoring the duties of medical staff to treat and monitor her drug detoxification. Furthermore, Defendants failed to conduct any health

**COMPLAINT FOR DAMAGES**

screenings, to take appropriate measures to treat her detoxification and to appropriately monitor her health.

161.    Defendants also failed to appropriately supervise, review, and ensure the competence of officers, jail staff, and medical staffs' provision of treatment to Ms. Gillis, and failed to enact appropriate standards and procedures that would have prevented such harm to her.

162.    Together, these Defendants acted negligently and improperly, breached their respective duties, and as a direct and proximate result, Ms. Gillis sustained injuries and damages resulting in injuries and damages to Plaintiffs as alleged herein.

163.    The negligent conduct of Defendants was committed within the course and scope of their employment.

164.    As a direct and proximate result of Defendants' failures, Ms. Gillis endured pain, suffering, physical injury, and emotional distress prior to her death as alleged herein.

165.    As a direct and proximate result of the conduct of Defendants, Ms. Gillis was compelled to and did employ the services of hospitals, surgeons, physicians, nurses, and the like, to care for and the treatment of Ms. Gillis and did incur medical, hospital and professional and incidental, all according to proof at the time of trial.

166.    Ms. Gillis also suffered a wholly preventable death, and her children incurred funeral and burial. Ms. Gillis' children have also suffered and will continue to suffer emotional distress, pain, suffering, medical treatment, past and future loss of earnings and benefits, loss of familial relations, loss of society, love, moral support, companionship, comfort, care, assistance, protection, affection, household services, financial support and care to the extent recoverable.

167.    The aforementioned acts and/or omissions of Defendants Bernal, in his individual capacity, CSUMB Officers, Monterey Officers, CFMG, Fithian, Edwards and Does 1 through 100, were willful, wanton, malicious, and oppressive, thereby justifying an award to Plaintiffs of exemplary and punitive damages to punish the wrongful conduct alleged herein and to deter such conduct in the future.

168.    Plaintiffs have sustained a loss of interest on the value of all damages from the date they were incurred to the present, and said loss will continue into the future.

**COMPLAINT FOR DAMAGES**

## PRAYER FOR RELIEF

Wherefore, Plaintiff prays for judgment against the Defendants as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For compensatory damages according to proof;

4.    For punitive and exemplary damages against each Defendant, where available, according to proof;

5.    For funeral and burial expenses, and incidental expenses, according to proof;

6.    For damages for loss of earning capacity and loss of earnings, according to proof;

7.    For damages for other economic losses, according to proof;

8.    For interest on general and special damages, as permitted by law;

9.    For costs of suit and reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and as otherwise authorized by statute or law;

10.    For restitution as the court deems just and proper, and

11.    For such other and further relief as the Court deems just and proper.


Dated: November 16, 2016                **ARIAS SANGUINETTI STAHLE**
                                                     **& TORRIJOS LLP**

                        By: _Elise R Sanguinetti_____
                                ELISE R. SANGUINETTI
                                JAMIE G. GOLDSTEIN
                                Attorneys for Plaintiff,
                                JAMES GREGORY and
                                BRANDON VILLARREAL

-30-

**COMPLAINT FOR DAMAGES**

## DEMAND FOR JURY TRIAL

Plaintiff requests a jury trial on all matters so triable.

Dated: November 16, 2016

**ARIAS SANGUINETTI STAHLE
& TORRIJOS LLP**

By: _Elise R Sanguinetti_

ELISE R. SANGUINETTI
JAMIE G. GOLDSTEIN
Attorneys for Plaintiff,
BRANDON VILLARREAL and
JAMES GREGORY

**COMPLAINT FOR DAMAGES**