UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| BRANDON VILLARREAL, et al., <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF MONTEREY, et al., <br><br> Defendants. | Case No. 16-CV-06672-LHK <br><br> **ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO DISMISS** <br><br> Re: Dkt. Nos. 44, 50 |

Plaintiff Brandon Villareal, a minor, by and through his guardian ad litem, Donald Villareal, and James Gregor, individually and as the successor in interest of the estate of Larra Ann Gillis, allege that Defendants County of Monterey, Sherriff Steve Bernal, Deputy J. Mendoza, Officer P. Sanchez, Deputy Wong, Officer Ann Rocamora, Deputy Douglas Raarup, the City of Marina, the Board of Trustees of the California State University, Officer Robin Leland, Corporal Carolyn Peliova, Corporal Daniel Andrada, California Forensic Medical Group, Dr. Taylor Fithian, Nurse Lori Edwards, and Does 1–100 are liable under federal and state law for the death of Decedent Larra Ann Gillis ("Gillis"). Before the Court are: (1) the motion to dismiss filed

1

Case No. 16-CV-06672-LHK
ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY
DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO
DISMISS

by Defendants County of Monterey ("County"), Monterey County Sherriff Steve Bernal ("Bernal"), Deputy J. Mendoza ("Mendoza"), Officer P. Sanchez ("Sanchez"), Deputy Wong ("Wong"), Officer Anna Rocamora ("Rocamora"), and Deputy Douglas Raarup ("Raarup") (collectively, "County Defendants"), ECF No. 50; (2) the motion to dismiss filed by Defendant City of Marina ("City"), ECF No. 44; and (3) the motion to strike filed by the County Defendants, ECF No. 52. Having considered the parties' briefing, the relevant law, and the record in this case, the Court hereby GRANTS IN PART and DENIES IN PART the County Defendants' motion to dismiss, GRANTS with leave to amend the City's motion to dismiss, and DENIES the County Defendants' motion to strike.

## I.    BACKGROUND

### A.    Factual Background

#### 1.    Parties

Plaintiff Brandon Villareal ("Villareal"), the son of Decedent Larra Ann Gillis, brings this action individually through his guardian ad litem for violations of his rights. ECF No. 1, ¶¶ 8–9. Plaintiff James Gregory ("Gregory"), another son of Gillis, brings this action individually and as successor in interest to the Estate of Larra Ann Gillis. *Id.* ¶¶ 12–13.

Defendant County of Monterey is a public entity organized and existing under the laws of the State of California. *Id.* ¶ 14. According to Plaintiffs, the County operates and manages Monterey County Jail. *Id.* Defendant Steve Bernal was the Sheriff of the County of Monterey at the time of Gillis's death. *Id.* ¶ 15. As Sheriff, Bernal "was charged by law with the administration of the Monterey County Jail" and "was responsible for promulgation of the policies and procedures and allowance of the practices/customs" alleged in the complaint. *Id.* County Deputy J. Mendoza, County Officer P. Sanchez, County Deputy Wong, County Officer Ann Rocamora, and County Deputy Douglas Raarup (collectively, "County Officers"), were allegedly present at the Monterey County Jail during the events described in the complaint. *Id.* ¶¶ 16–20, 65.

The County contracts with Defendant California Forensic Medical Group ("CFMG") to

2

provide medical, mental health, and dental services for the Monterey County Jail. *Id.* ¶ 30. Defendant CFMG is a California corporation headquartered in Monterey, California. *Id.* Defendant Taylor Fithian, MD, is a physician employed by CFMG at the Monterey County Jail. *Id.* ¶ 31. Defendant Lori Edwards, RN, is a nurse employed by CFMG at the Monterey County Jail. *Id.* ¶ 31.

Defendant Marina City is a municipality organized under the laws of the State of California. *Id.* ¶ 22. The City contracted with Defendant Board of Trustees of the California State University ("CSU") to provide police services for the City on the day of Gillis's arrest. *Id.* Specifically, on the day of Gillis's arrest, CSU provided police services to the City through its police officers at California State University Monterey Bay ("CSUMB"). *Id.* ¶ 24. Plaintiffs allege that CSU was "responsible for the actions and/or inactions and the policies, procedures, and practices/customs of the CSUMB police department and its respective employees and/or agents." *Id.* ¶ 25. Defendants Officer Robin Leland ("Leland"), Corporal Carolyn Peliova ("Peliova"), and Corporal Daniel Andrada ("Andrada") (collectively, "CSUMB Officers") are CSUMB police officers. *Id.* ¶¶ 26–29.

### 2. The Events of December 4 and 5, 2015

On December 4, 2015, CSUMB police department Officer Leland responded to a call reporting that Gillis was walking in and out of traffic in Marina, California. *Id.* ¶ 54–55. After Leland arrived on the scene, Leland attempted to grab Gillis's arm, but Gillis ran away. *Id.* ¶ 55. Leland called CSUMB police department Corporal Peliova and CSUMB police department Corporal Andrada and informed them where they could find Gillis. *Id.* After Peliova and Andrada found Gillis, Andrada grabbed Gillis's arm and attempted to put her hands behind her back. *Id.* ¶ 57. However, Andrada was not successful and therefore Andrada tripped Gillis, who fell to the ground. *Id.* Peliova then handcuffed Gillis while Gillis was face down on the ground. *Id.* ¶ 58. Plaintiffs allege that at the time of her arrest, Gillis was delusional, "[h]er pupils were dilated, she was pale and sweaty and her mouth was extremely dry with thick white saliva around her lips. Ms.

3

Gillis also had irregular and rapid breathing even after she had been sitting for a period of time." *Id.* ¶ 59. Soon after Gillis was handcuffed, Leland again arrived on the scene. *Id.* Gillis was then placed in the back of a patrol vehicle, and Leland transported Gillis to Monterey County Jail, where Gillis was booked by Rocamora at 8:15 a.m. *Id.* ¶¶ 60–61.

At the time that Gillis was arrested and booked, Gillis exhibited "clear signs of being under the influence." *Id.* ¶ 61. Plaintiffs allege that the County was also well aware that Gillis "suffered from substance abuse and mental illness from her prior incarcerations." *Id.* ¶ 61. At the time of booking, Gillis also suffered from lacerations to her head, hands, and wrists. *Id.*

After booking, Plaintiffs allege that Mendoza, who was "a deputy and not a medical provider, determined that Ms. Gillis should be put in restraints and placed in a safety cell." *Id.* ¶ 61. Plaintiffs allege that Gillis remained in the safety cell with no medical attention or food and only a single cup of water for the next 28 hours. *Id.* ¶ 63. During her time in the safety cell, no physician evaluated Gillis, although Dr. Fithian was notified of Gillis's condition. *Id.* ¶ 64. Nurse Edwards and other staff at the jail allegedly acknowledged that while Gillis was in the safety cell, Gillis was "acting erratic and yelling 'help me,' but they did not provide her medical attention." *Id.* ¶ 65. During this time, Gillis allegedly lay on her side and got on her knees to beg for help. *Id.* ¶ 66.

At 11:30 a.m. on the morning of December 5, 2015, Gillis was found "laying on her side covered in feces moaning and unresponsive." *Id.* ¶ 67. A nurse contacted Dr. Fithian, but Dr. Fithian did not come to see Gillis. *Id.* Instead, an hour later Dr. Fithian advised nursing staff to send Gillis to the hospital for "drug induced detoxification." *Id.* At the time she was taken to the hospital in an ambulance, Gillis's "blood glucose was 44, her oxygen saturation was in the 60s and she had agonal breathing." *Id.* ¶ 68. Gillis never regained consciousness and died at Natividad Hospital on December 19, 2015. *Id.* ¶ 69.

### 3. Allegations against the County Defendants and CFMG

Plaintiffs allege that the County and Bernal "failed to have policies or procedures in place

4

to properly care for inmates, including Ms. Gillis, who were in need of detoxification." *Id.* ¶ 62. Plaintiffs further allege that "[t]he County of Monterey and CFMG have a policy and practice of failing to provide adequate medical care to inmates at Monterey County Jail." *Id.* ¶ 44.

Plaintiffs allege that the County and CFMG "have been on notice that their provision of medical care to inmates is inadequate and results in needless harm since at least 2007, when the Monterey County Sheriff's Office and the Monterey County Board of Supervisors hired an outside consulting firm to perform a needs assessment" for the Monterey County Jail. *Id.* ¶ 45. Plaintiffs allege that the needs assessment was updated in December 2011. *Id.* ¶ 46 & Ex. 1. The needs assessment found that the Monterey County Jail was chronically understaffed and that chronic understaffing hinders the Jail's ability to provide adequate medical care. *Id.* ¶ 46. Specifically, Plaintiffs allege that the "available health care staff [at the Jail] is insufficient to provide medical evaluations, monitoring, and follow-up care to inmates who are suffering from serious and chronic illnesses, or to treat inmates on an emergency basis." *Id.* ¶ 48.

In addition to the needs assessment, Plaintiffs allege that "the County of Monterey was again specifically put on notice of serious problems with detoxification and sobering treatment in the jail" via a class action lawsuit, *Hernandez v. Cnty. of Monterey*, No. 5:13-cv-2354-BLF (N.D. Cal.), filed against the County of Monterey in 2013. *Id.* ¶ 49. Plaintiffs allege that class counsel in *Hernandez* "specifically objected to the fact that defendants' agents and staff were employing a dangerous and punitive 'detox protocol,' refusing medications to inmates who then suffered from intense, untreated pain as well as powerful, dangerous and unnecessary withdrawal symptoms." *Id.* ¶ 49.

In April 2015, the district court in *Hernandez* issued a preliminary injunction requiring the County to file a plan including the following elements:

> a. Medical staff shall timely conduct the initial evaluation to determine if an inmate is intoxicated and/or suffering from withdrawal or at high risk for withdrawal;

1      b. Medical staff shall make the decision on who should be placed in a

2      sobering cell and who should be transferred to the hospital to be treated

3      for possible or actual withdrawal;

4      c. Medical providers (physicians, physicians assistants, and/or nurse

5      practitioners) shall be timely involved in assessing and treating inmates

6      potentially undergoing withdrawal, and non-provider medical staff shall

7      timely refer to providers those inmates undergoing withdrawals when

8      clinically indicated;

9      d. Detoxifying inmates shall be adequately monitored using the CIWA

10     protocol or equivalent validated monitoring protocol, shall receive

11     pharmacological treatment as indicated and be appropriately housed based

12     on their clinical conditions;

13     e. Defendants shall develop separate treatment protocols for opiate,

14     alcohol and benzodiazepine withdrawal . . . . *Id.* ¶ 51.

15 **B. Procedural History**

16      Plaintiffs filed their complaint on November 17, 2016. ECF No. 1. On February 2, 2017,

17 the Court granted the parties' stipulation to dismiss with prejudice all claims under 42 U.S.C. §

18 1983 against Defendants CSU, Leland, Peliova, and Andrada. ECF No. 18. After this stipulation

19 of dismissal, Plaintiff alleges eleven causes of action against the Defendants as follows:

20

21

22

23

24

25

26

27

6

28 ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY
DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO
DISMISS

| | County | Bernal | Mendoza | Sanchez | Wong | Rocamora | Raarup | City of Marina | CSU | Leland | Peliova | Andrada | CFMG | Fithian | Edwards | Doe Defendants |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Claim 1: 42 U.S.C. § 1983—excessive force in violation of the Fourth Amendment** | | | | | | | | X | | | | | | | | 1–50 |
| **Claim 2: 42 U.S.C. § 1983—failure to provide medical care in violation of the Fourteenth Amendment** | X | X | X | X | X | X | X | | | | | | X | X | X | 51–100 |
| **Claim 3: 42 U.S.C. § 1983—failure to protect in violation of the Fourteenth Amendment** | X | X | X | X | X | X | X | X | | | | | X | X | X | 1–100 |
| **Claim 4: 42 U.S.C. § 1983—deprivation of substantive due process rights in violation of the First and Fourteenth Amendments** | X | X | X | X | X | X | X | X | | | | | X | X | X | 1–100 |
| **Claim 5: Failure to Summon Medical Care in violation of Cal. Gov't Code § 845.6** | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | 1–100 |
| **Claim 6: Medical Malpractice** | X | | | | | | | | | | | | X | X | X | 51–100 |

7

|

|  | County | Bernal | Mendoza | Sanchez | Wong | Rocamora | Raarup | City of Marina | CSU | Leland | Peliova | Andrada | CFMG | Fithian | Edwards | Doe Defendants |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **Claim 7: Negligent Supervision, Training, Hiring, and Retention** | X | X |  |  |  |  |  | X | X |  |  |  | X |  |  | 1–100 |
| **Claim 8: Violation of Cal. Civil Code § 52.1** |  |  |  |  |  |  |  | X | X | X | X | X |  |  |  | 1–50 |
| **Claim 9: Battery** |  |  |  |  |  |  |  | X | X | X | X | X |  |  |  | 1–50 |
| **Claim 10: Wrongful Death** | X | X | X | X | X | X | X |  |  |  |  |  | X | X | X | 51–100 |
| **Claim 11: Negligence** | X | X | X | X | X | X | X | X | X | X | X | X | X | X | X | 1–100 |

The City filed a motion to dismiss on February 23, 2017. ECF No. 44. Plaintiffs filed an opposition on April 7, 2017. ECF No. 64. The City filed a reply on April 21, 2017. ECF No. 67.

The County Defendants filed a motion to dismiss on March 3, 2017. ECF No. 50. Plaintiffs filed an opposition on April 21, 2017. ECF No. 68. The County Defendants filed a reply on April 28, 2017. ECF No. 71.

The County Defendants filed a motion to strike on March 3, 2017. ECF No. 52. Plaintiffs filed an opposition on April 21, 2017. ECF No. 69. The County Defendants filed a reply on April 28, 2017. ECF No. 72.

8

## II. LEGAL STANDARD

### A. Motion to Dismiss Under Rule 12(b)(6)

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a complaint to include "a short and plain statement of the claim showing that the pleader is entitled to relief." A complaint that fails to meet this standard may be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(6). The U.S. Supreme Court has held that Rule 8(a) requires a plaintiff to plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule 12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

However, a court need not accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234 F.3d 428, 435 (9th Cir. 2000), and the "[C]ourt may look beyond the plaintiff's complaint to matters of public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v. Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183 (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch v. Cnty. of L.A.*, 119 F.3d 778, 783 n.1 (9th Cir.

United States District Court
Northern District of California

1997).

**B. Leave to Amend**

If the Court determines that the complaint should be dismissed, it must then decide whether to grant leave to amend. Under Rule 15(a) of the Federal Rules of Civil Procedure, leave to amend "should be freely granted when justice so requires," bearing in mind that "the underlying purpose of Rule 15 . . . [is] to facilitate decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Id.* at 1130 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nonetheless, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party. . . , [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**C. Motion to Strike**

Federal Rule of Civil Procedure 12(f) permits a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir.1983). Motions to strike are generally disfavored and "should not be granted unless the matter to be stricken clearly could have no possible bearing on the subject of the litigation . . . . If there is any doubt whether the portion to be stricken might bear on an issue in the litigation, the court should deny the motion." *Platte Anchor Bolt, Inc. v. IHI, Inc.*, 352 F. Supp. 2d 1048, 1057 (N.D. Cal. 2004) (citations omitted). "With a motion to strike, just as with a motion to dismiss, the court should view the pleading in

10

United States District Court

the light most favorable to the nonmoving party." *Id.* "Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court." *Cruz v. Bank of N.Y. Mellon*, 2012 WL 2838957, at *2 (N.D. Cal. July 10, 2012) (citing *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010)).

### III. DISCUSSION

The Court considers the County Defendants' motion to strike, the County Defendants' motion to dismiss, and the City Defendants' motion to dismiss in turn.

#### A. Motion to Strike

The County Defendants move to strike Exhibits 1 and 2 to Plaintiffs' complaint, as well as paragraphs 49–50 of the complaint, pursuant to Federal Rule of Civil Procedure 12(f). Rule 12(f) provides in relevant part that a court "may strike from a pleading ... any redundant, immaterial, impertinent, or scandalous matter." "Motions to strike are generally disfavored." *Abney v. Alameida*, 334 F. Supp. 2d 1221, 1234 (S.D. Cal. 2004) (citing *Cairns v. Franklin Mint Co.*, 24 F.Supp.2d 1013, 1037 (C.D.Cal.1998)). "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Sidney-Vinstein*, 697 F.2d at 885. Ultimately, whether to grant a motion to strike lies within the sound discretion of the district court. *See Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010).

Exhibit 1 to Plaintiffs' complaint is a document entitled "County of Monterey, Office of the Sheriff, Jail Needs Assessment" dated December 30, 2011 ("Needs Assessment"). Exhibit 2 to Plaintiffs' complaint is a letter dated April 15, 2013 from the law firm Rosen Bien Galvan & Grunfeld ("Rosen Bien") to the Sheriff of the County of Monterey and the Monterey County Board of Supervisors ("Rosen Bien Letter"). The letter asserts that the Monterey County Jail suffers from serious overcrowding and delays in medical care, and the letter threatens a class action lawsuit against the County if these concerns are not addressed. Finally, paragraphs 49–50 of the complaint describe the case of *Hernandez v. Cnty. of Monterey*, No. 5:13-cv-2354-BLF (N.D.

11

Cal. 2013), and the Court's findings in that case. Specifically, paragraph 50 contains the *Hernandez* Court's findings that the Jail does not provide adequate medical care for inmates in need of detoxification. These findings are then used to justify the preliminary injunction that the *Hernandez* Court issued in April 2015, which is described in paragraph 51 of the complaint.

According to the County Defendants, the Needs Assessment was created in 2007 and updated in 2011 and was "commissioned by the Monterey County Sheriff's Department as a prerequisite for the competition for jail construction grants." ECF No. 52, at 3. The County Defendants argue that the Needs Assessment is "immaterial" or "impertinent" within the meaning of Rule 12(f) because the Needs Assessment was created "for a very narrow purpose relating to grant funding and jail construction planning and [is] not an indicator that the Sheriff' is operating his or her jail in a manner that violates the U.S. Constitution." ECF No. 52, at 3.

Similarly, the County Defendants argue that the Rosen Bien Letter is "immaterial" or "impertinent" within the meaning of Rule 12(f) because it "touch[es] upon areas which are not germane to this litigation and are not confined to what occurred in one safety cell over a relatively brief period of time, as to the provision of medical care." *Id.* 4–5. The County Defendants make no argument about why paragraphs 49–50 of the complaint should be stricken.

The Court concludes that "view[ing] the pleading in the light most favorable to the nonmoving party," *Platte Anchor Bolt*, 352 F. Supp. 2d at 1057, the Needs Assessment, the Rosen Bien Letter, and paragraphs 49–50 of the complaint are all relevant to the claims alleged in the complaint. As part of their claims under 42 U.S.C. § 1983, Plaintiffs allege that since at least 2007, the County Defendants have had notice of an unconstitutional policy of depriving inmates of adequate medical care. Plaintiffs rely on the Needs Assessment, the Rosen Bien Letter, and the *Hernandez* case to establish that such an unconstitutional policy existed and that the County Defendants were on notice of the deficiencies of the policy.

Although the Needs Assessment may not have been created for the purpose of identifying unconstitutional policies at the jail, Plaintiffs allege that it provides evidence of such policies.

12

Similarly, although the Rosen Bien Letter is not "confined to what occurred in one safety cell over a relatively brief period of time," ECF No. 52, at 4–5, Plaintiffs' allegations of wrongdoing are also not confined to a brief period of time. Instead, Plaintiffs allege that the County Defendants had an ongoing unconstitutional policy, and the Rosen Bien Letter supports Plaintiffs' assertion that the County Defendants were on notice of that policy. Finally, the findings of the *Hernandez* Court in paragraphs 49–50 of the complaint provide further support for Plaintiffs' allegation that the County Defendants had an unconstitutional policy of failing to provide medical care.

Thus, the Needs Assessment, the Rosen Bien Letter, and paragraphs 49–50 of the complaint are relevant, and perhaps even critical, to Plaintiffs' allegation that the County Defendants have a long-standing policy or practice of denying inmates like Gillis proper medical care. *See Pajas v. Cty. of Monterey*, 2016 WL 3648686, at *14–15 (N.D. Cal. July 8, 2016) (considering the same documents and allegations in a similar case and finding that they were sufficient to state a claim under § 1983). Even if there were some doubt about the relevance of these Exhibits and paragraphs, striking would not be proper. "If the court is in doubt as to whether the challenged matter may raise an issue of fact or law, the motion to strike should be denied, leaving the assessment of the sufficiency of the allegations for adjudication on the merits after proper development of the factual nature of the claims through discovery." *Guar. Real Estate v. Hanover Ins. Co.*, 2014 WL 5817536, at *5 (E.D. Cal. Nov. 6, 2014); *see also Abney*, 334 F. Supp. 2d at 1234 ("Motions to strike are generally disfavored.").

For these reasons, the Court finds that the Needs Assessment, the Rosen Bien Letter, and paragraphs 49–50 are relevant to the alleged violations and therefore DENIES the County Defendants' motion to strike.

**B. County's Motion to Dismiss**

As discussed above, the County Defendants include the County of Monterey, Sheriff Steve Bernal, County Deputy J. Mendoza, County Officer P. Sanchez, County Deputy Wong, County Officer Ann Rocamora, and County Deputy Douglas Raarup. The County Defendants move to

13

dismiss Claim 6 (medical malpractice) as to the County and Claim 7 (negligent supervision) as to the County and Bernal. The County Defendants also move to dismiss Claim 2 (42 U.S.C. § 1983 claim for failure to provide medical care), Claim 3 (42 U.S.C. § 1983 claim for deliberate indifference to serious medical needs), Claim 4 (42 U.S.C. § 1983 claim for deprivation of substantive due process rights), Claim 5 (failure to summon medical care), Claim 10 (wrongful death), and Claim 11 (negligence) as to the County Defendants.

In their opposition to the motion to dismiss, Plaintiffs agree that Claim 6 (medical malpractice) should be dismissed as to the County. Therefore, the Court GRANTS the County Defendants' motion to dismiss Plaintiffs' claim for medical malpractice against the County with prejudice.

The Court first considers Plaintiffs' three claims under 42 U.S.C. § 1983 (Claims 2, 3, and 4). The Court then considers Claim 5, Claim 7, Claim 10, and Claim 11 in turn.

### 1. 42 U.S.C. § 1983 Claims

Plaintiffs bring two survival claims under 42 U.S.C. § 1983 against the County Defendants: Claim 2 for deliberate indifference to serious medical needs in violation of the Fourteenth Amendment and Claim 3 for failure to protect in violation of the Fourteenth Amendment. Plaintiffs also bring Claim 4 under 42 U.S.C. § 1983 for deprivation of the parent-child relationship in violation of the First and Fourteenth Amendments.

#### a. Governing Law for 42 U.S.C. § 1983 Claims

Plaintiffs' Claim 2 and Claim 3, for failure to provide medical care and failure to protect in violation of 42 U.S.C. § 1983, are both based on the County Defendants' alleged deliberate indifference to Gillis's need for medical care during her incarceration. Deliberate indifference to serious medical needs violates the Eighth Amendment's proscription against cruel and unusual punishment. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976); *Egberto v. Nevada Dep't of Corr.*,

2017 WL 476577, at *1 (9th Cir. Feb. 6, 2017).[1] Likewise, prison officials have an affirmative duty to "ensure that inmates receive adequate food, clothing, shelter, and medical care." *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Prison officials violate their affirmative duty by "acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner." *Id.* at 836.

A determination of "deliberate indifference" involves an examination of two elements: the seriousness of the prisoner's medical need and the nature of the defendant's response to that need. *See McGuckin v. Smith*, 974 F.2d 1050, 1059–60 (9th Cir. 1992), *overruled in part on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir. 1997) (en banc). A prison official is deliberately indifferent if she or he knows that a prisoner faces a substantial risk of serious harm and disregards that risk by failing to take reasonable steps to abate it. *Farmer*, 511 U.S. at 837. The prison official must not only "be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists," but he or she "must also draw the inference." *Id.* "Prison officials are deliberately indifferent to a prisoner's serious medical needs when they deny, delay, or intentionally interfere with medical treatment. . . . Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment rights." *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted); *see Farmer,* 511 U.S. at 835–36 & n.4 (recognizing that neither negligence nor gross negligence will constitute deliberate indifference).

A plaintiff may state a claim under § 1983 against a supervisor for deliberate indifference. *Starr v. Baca*, 652 F.3d 1202, 1205 (9th Cir. 2011). "A defendant may be held liable as a supervisor under § 1983 if there exists either (1) his or her personal involvement in the

---

[1] Claims alleging Fourteenth Amendment violations for deliberate indifference to the medical needs of pretrial detainees are analyzed under the same framework as Eighth Amendment violations. *See Clouthier v. Cty. of Contra Costa*, 591 F.3d 1232, 1244 (9th Cir. 2010) (applying Eighth Amendment framework to claim for deliberate indifference to serious medical needs of a pretrial detainee brought under the Fourteenth Amendment).

Case No. 16-CV-06672-LHK
ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY
DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO
DISMISS

constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Id*. at 1207 (citation omitted). "A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others." *Id*. at 1208 (quoting *Watkins v. City of Oakland*, 145 F.3d 1087, 1093 (9th Cir. 1998)). Additionally, "[s]upervisory liability exists even without overt personal participation in the offensive act if supervisory officials implement a policy so deficient that the policy itself is a repudiation of constitutional rights and is the moving force of the constitutional violation." *Redman v. Cnty. San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991), *abrogated on other grounds by Farmer v. Brennan*, 511 U.S. 825 (1994).

Plaintiffs' Claim 4, for violation of substantive due process rights under 42 U.S.C. § 1983, is based on the allegation that the County Defendants caused Gillis's death and thereby "deprived Plaintiffs of their liberty interest in a parent-child relationship." Compl. ¶ 108. "Substantive due process protects individuals from arbitrary deprivation of their liberty by government." *Brittain v. Hansen*, 451 F.3d 982, 991 (9th Cir. 2006). "Parents and children may assert Fourteenth Amendment substantive due process claims if they are deprived of their liberty interest in the companionship and society of their child or parent through official conduct." *Lemire v. Cal. Dept. Corrections & Rehabilitation*, 726 F.3d 1062, 1075 (9th Cir. 2013). The Ninth Circuit has stated that "to establish a constitutional violation based on substantive due process, [a plaintiff] must show both a deprivation of her liberty and conscience-shocking behavior by the government." *Id*. "Just as the deliberate indifference of prison officials to the medical needs of prisoners may support Eighth Amendment liability, such indifference may also rise to the conscience-shocking level required for a substantive due process violation." *Lemire*, 726 F.3d at 1075.

### b. Defendant Bernal

The County Defendants move to dismiss Claims 2, 3, and 4 against Sheriff Steve Bernal on the grounds that the complaint fails to "allege any specific inadequacies . . . attributed directly to

16

Sheriff Bernal" to show that Bernal demonstrated deliberate indifference. ECF No. 50, at 10. Instead, the County Defendants claim that the complaint "assert[s] liability on a theory of respondeat superior and not on direct acts or omission by Sheriff Bernal." *Id.*

In California, the sheriff is required by statute to "take charge of and be the sole and exclusive authority to keep the county jail and the prisoners in it." Cal. Gov. Code § 26605; *Redman*, 942 F.2d at 1446. In *Redman*, the Ninth Circuit held that a county sheriff in California could be found to have been deliberately indifferent where the sheriff "knew or reasonably should have known of the overcrowding at a facility under his administration and . . . he acquiesced in a deficient policy that was a moving force" behind the prisoner's alleged constitutional violation. *Redman*, 942 F.2d at 1447-48. Similarly, in *Starr*, the Ninth Circuit held that a sheriff's "knowledge of the unconstitutional conditions in the jail, including his knowledge of the culpable actions of his subordinates, coupled with his inaction, amounted to acquiescence in the unconstitutional conduct of his subordinates." *Starr*, 652 F.3d at 1208.

Thus, contrary to the County Defendants' argument, under *Redman* and *Starr*, Plaintiffs can state a claim against Bernal under § 1983 as long as Plaintiffs sufficiently allege "knowledge of the unconstitutional conditions in the jail" and "inaction" that "amounted to acquiescence in the unconstitutional conduct." *Id.*

In the instant case, Plaintiffs have alleged that Bernal had notice of the deficient provision of medical care in the Monterey County Jail as a result of the following: (1) a needs assessment performed by an outside consulting firm in 2007 and updated in 2011 that found "that chronic understaffing hinders County of Monterey's ability to provide medical care" and that the "County of Monterey and CFMG maintain insufficient numbers of health care professionals to provide adequate care to the more than 900 inmates," Compl. ¶ 47 & Ex. 1; and (2) a class action lawsuit filed against the County of Monterey, the Monterey County Sheriff's Office, and CFMG in 2013 that alleged, *inter alia*, that the Monterey County Jail's policies and procedures for inmates in need of opiate detoxification constituted deliberate indifference, *id.* ¶¶ 49–51.

17

The Court concludes that these allegations are sufficient to allege that Bernal "knew or reasonably should have known" of the deficient medical care provided to inmates like Gillis who were in need of detoxification at the Monterey County Jail. *Redman*, 942 F.2d at 1447-48. In particular, the Court notes that since the time that Bernal took office on December 31, 2014, the Monterey County Sheriff's Office has been a named defendant in the *Hernandez* litigation. *See Hernandez*, 13-cv-02354-BLF, Dkt. Nos. 108 (motion for preliminary injunction), 325 (Monterey County Sheriff's Office's opposition to motion for preliminary injunction). In April 2015, eight months before Gillis's arrest and death, the *Hernandez* court issued a preliminary injunction holding that (1) the "jail does not reliably monitor inmates as they detoxify," (2) fails to follow its policy "that nurses consult with a physician if a patient displays any one of eight abnormal signs," and (3) "practices a single drug protocol for alcohol, benzodiazepine and opiate withdrawal, even though these are distinct conditions requiring different medications and dosing periods for each." *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 949-50 (N.D. Cal. 2015); *see also* Compl. ¶ 51 (quoting *Hernandez* preliminary injunction order). The *Hernandez* court accordingly ordered the County of Monterey, the Monterey County Sheriff's Office, and CFMG to ensure that "[m]edical providers . . . shall be timely involved in assessing and treating inmates potentially undergoing withdrawal" and to "develop separate treatment protocols for opiate, alcohol and benzodiazepine withdrawal." *Hernandez*, 110 F. Supp. 3d at 959; *see also* Compl. ¶ 51 (quoting preliminary injunction order).

Thus, at the time of Gillis's arrest, the Monterey County Sheriff's Office was subject to a preliminary injunction to remedy the policies and procedures that Plaintiffs allege constitute deliberate indifference in the instant case. Accordingly, taking the facts alleged in the complaint as true, it is indisputable that Bernal knew of the allegedly unconstitutional conduct at issue. The allegations in the complaint, including the allegation that Gillis was left alone and suffering from withdrawal symptoms for 28 hours with nothing but a cup of water despite yelling repeatedly for help, demonstrate that Bernal has not taken sufficient steps—despite the preliminary injunction—

18

to bring the policies of the Monterey County Sheriff's Department into conformity with the United States Constitution.

Indeed, this Court has already held, in a very similar case, that the Needs Assessment and the *Hernandez* litigation establish that "Bernal knew or should have known about the allegedly deficient policies and procedures for inmates in need of detoxification" as early as late 2014, when Bernal was elected and then took office as the Sheriff of Monterey County. *See Pajas*, 2016 WL 3648686, at *9. Thus, it is clear that Bernal had notice of the Jail's allegedly deficient policies well before Gillis's arrest and death in December 2015. Nevertheless, according to the complaint, Bernal did not make the necessary changes, and the conditions at the Monterey County Jail continued to violate inmates' constitutional rights through the time of Gillis's arrest and death in December 2015.

In short Plaintiffs have pled facts demonstrating that at the time of Gillis's death, Bernal knew of and acquiesced in the allegedly unconstitutional procedures for providing medical care at the Monterey County Jail. Therefore, the Court DENIES the County Defendants' motion to dismiss Claims 2, 3, and 4 against Bernal for violation of 42 U.S.C. § 1983.

### c. Defendant County of Monterey

The County Defendants move to dismiss Claims 2, 3, and 4 against the County on the grounds that Plaintiffs have not sufficiently alleged that the County "had a policy of denying inmates at the Monterey County jail access to appropriate, competent, and necessary care for serious medical and psychiatric needs." ECF No. 50, at 7. Specifically, Plaintiffs argue that "Plaintiff has not identified the challenged policy or practice and explained how such amount to deliberate indifference, or how the policy/practice was deficient." *Id.* at 9.

In light of the allegations in the complaint, however, the Court finds that Plaintiffs have sufficiently alleged that the County had a policy of unconstitutionally denying medical care and protection. The complaint alleges that, since at least 2007, the County has maintained "insufficient numbers of health care professionals to provide adequate care to the more than 900 inmates" and

19

that the "available health staff is insufficient to provide medical evaluations, monitoring, and follow-up care to inmates who are suffering from serious and chronic illnesses, or to treat inmates on an emergency basis." Compl. ¶ 48. Plaintiffs allege that the County "does not reliably monitor inmates as they detoxify," and that although the County knew "that physicians are supposed to see all withdrawing patients within 24 hours, . . . this also did not happen." *Id.* ¶ 50 (quoting *Hernandez*, 110 F. Supp. 3d at 949).

Drug withdrawal constitutes a serious medical need requiring appropriate medical care under the Eighth Amendment. *Pajas*, 2016 WL 3648686, at *17; *see also Hernandez*, 110 F. Supp. 3d at 948 ("Withdrawal is a serious and potentially deadly medical condition, with symptoms including seizures, hallucinations, agitation and increased blood pressure."); *Foelker v. Outagamie Cty.*, 394 F.3d 510, 513 (7th Cir. 2005) (finding opiate withdrawal amounts to a serious medical need); *Gonzalez v. Cecil Cty.*, 221 F. Supp. 2d 611, 616 (D. Md. 2002) (finding heroin withdrawal is a serious medical need). Thus, the County's allegedly deficient screening and medication protocols for drug withdrawal "may constitute deliberate indifference to a serious healthcare need." *Hernandez*, 110 F. Supp. 3d at 948; *see also Gonzalez*, 221 F. Supp. 2d at 617 (holding that a policy of refusing meaningful treatment for heroin withdrawal could support a finding of deliberate indifference). Additionally, "[i]nadequate staffing can create an objective risk of substantial harm in a prison setting that is sufficient to satisfy the objective prong of the deliberate indifference test." *Lemire*, 726 F.3d at 1076. Moreover, Plaintiffs allege that the County was on notice of their inadequate staffing and the deficiency of their policies for detoxifying inmates as a result of the 2007 and 2011 needs assessments and the *Hernandez* litigation, which commenced in 2013. *Id.* ¶¶ 33-37. Despite the County's knowledge of its allegedly deficient policies and despite the preliminary injunction in *Hernandez*, Plaintiffs allege that the County still has "a policy and practice of failing to provide adequate medical care to inmates at Monterey County Jail." *Id.* ¶ 44; *see also Henry v. Cty. of Shasta*, 137 F.3d 1372 (9th Cir. 1998) ("When a county continues to turn a blind eye to severe violations of inmates' constitutional rights—despite

20

Case No. 16-CV-06672-LHK
ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO DISMISS

having received notice of such violations—a rational fact finder may properly infer the existence of a previous policy or custom of deliberate indifference.").

In short, Plaintiffs sufficiently allege that at the time of Gillis's arrest and death, the County had a policy of ignoring inmates' serious medical needs. The County Defendants argue that "Plaintiffs cite to no separate, particular set of offending County policies or policy terms," ECF No. 50, at 8, but Plaintiffs have sufficiently alleged a policy or practice of providing inadequate medical care for inmates as they detoxify.

Furthermore, Plaintiffs have alleged that the County's deficient policies led to Decedent's death. Plaintiffs allege that "Ms. Gillis showed clear signs of drug withdrawal, however the signs were repeatedly ignored as were her direct pleas for help. Defendants repeatedly failed to address obvious signs of medical distress and ignored the duties of medical staff to treat and monitor Ms. Gillis' drug detoxification." Compl. ¶ 115. Consistent with the alleged policy of deliberate indifference to medical needs, Plaintiffs allege that the County "failed to conduct any health screenings, to take appropriate measures to treat Ms. Gillis' detoxification and to appropriately monitor her health." *Id.* ¶ 115. Plaintiffs additionally allege that Decedent "died a wholly preventable death" as a result of the County's "fail[ure] to enact appropriate standards and procedures that would have prevented such harm to her. *Id.* ¶ 68. The Court concludes that, based on the allegations in the complaint, it was "reasonably foreseeable" that the County's deficient policies for managing opiate detoxification would lead to the alleged deficient treatment of Gillis and Gillis's subsequent death. *See Kwai Fun Wong v. United States*, 373 F.3d 952, 966 (9th Cir. 2004).

Finally, as to Claim 4 against the County, "the deliberate indifference of prison officials to the medical needs of prisoners may . . . 'rise to the conscience-shocking level' required for a substantive due process violation." *Lemire*, 726 F.3d at 1075. "A prison official's deliberately indifferent conduct will generally 'shock the conscience" so as long as the prison official had time to deliberate before acting or failing to act in a deliberately indifferent manner." *Id.* In the instant

case, the County does not argue that the County lacked the time to deliberate before acting or failing to act. Indeed, the complaint alleges that the County was on notice of its deficient policies as early as 2007, which is 8 years before Gillis's death. Compl. ¶ 45. Thus, because Plaintiffs have sufficiently alleged that the County was deliberately indifferent to Gillis's serious medical needs, Plaintiffs have also alleged "conscience-shocking" conduct as required for Plaintiffs' claim for substantive due process violations. *See Lemire*, 726 F.3d at 1085 (holding that the existence of a triable fact regarding deliberate indifference by prison officials meant that there was "also a triable issue of fact as to whether their actions rose to the conscience-shocking level required for a Fourteenth Amendment substantive due process violation").

Therefore, the Court DENIES the County's motion to dismiss Claims 2, 3, and 4 against the County for violation of 42 U.S.C. § 1983.

### d. County Officers

Finally, the County Defendants move to dismiss Claims 2, 3, and 4 for violation of 42 U.S.C. § 1983 as to County Deputy J. Mendoza, County Officer P. Sanchez, County Deputy Wong, County Officer Ann Rocamora, and County Deputy Douglas Raarup (collectively, "County Officers"). The County Defendants argue that Plaintiffs have not "identified any specific policy or practice [the County Officers] followed which was deliberately indifferent . . . or how such [deliberate indifference] caused Plaintiffs['] harm." "ECF No. 50, at 12. Instead, the County Defendants argue, Plaintiffs have relied only on "an implied claim that [the County Defendants] acted improperly." ECF No. 50, at 12.

However, as discussed above, the complaint adequately alleges that the County had a policy or practice of providing inadequate medical care to inmates in need of drug detoxification. Additionally, the complaint adequately alleges that the County Officers, along with other Defendants, acted pursuant to this policy or practice in failing to treat Gillis's serious medical needs. Indeed, the complaint alleges that despite the fact that "Ms. Gillis showed clear signs of drug withdrawal," Gillis was given nothing but a single cup of water during her 28 hours at the jail

22

and that Gillis was only given medical care after "she was found nearly unconscious and covered in feces." Compl. ¶¶ 1, 115.

Specifically, the complaint alleges that Gillis was "booked by Defendant Rocamora at 8:15 a.m." and that Mendoza "determined that Ms. Gillis should be put in restraints and placed in a safety cell . . . at 8:13 am on December 4, 2015." *Id.* ¶ 61. Subsequently, the complaint alleges that "[d]uring the twenty-eight (28) hour period Defendant Monterey Officers . . . repeatedly acknowledged Ms. Gillis was acting erratic and yelling 'help me,' but they did not provide her medical attention." Compl. ¶ 65. Based on these facts, the complaint alleges that the "[County] Officers . . . were specifically on notice that Ms. Gillis was in need of urgent medical attention for severe drug withdrawal symptoms and injuries sustained at the time of her arrest" and yet the County Officers failed to provide medical care or basic protection to Gillis.

Thus, the County Defendants' argument that "[t]here are no allegations as to the perceived actions or inactions of" the County Officers is incorrect. ECF No. 50, at 12. On the contrary, the complaint alleges that each of the County Officers heard Gillis's cries for help, knew that Gillis needed medical attention, and yet did nothing. These allegations are sufficient to inform the County Defendants of the factual and legal basis for the claims against them. *See Washington v. Baenziger*, 673 F. Supp. 1478, 1482 (N.D. Cal. 1987) (denying a motion to dismiss because "a careful reading [of the complaint] provides defendants with adequate notice of the nature of the claims against them").

For these reasons, the Court concludes that the complaint "contain[s] sufficient allegations of underlying facts to give fair notice and to enable" each of the County Officers "to defend [himself or herself] effectively." *AE ex rel. Hernandez v. County of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)). Therefore, the Court DENIES the County Defendants' motion to dismiss Claims 2, 3, and 4 against the County Officers for violation of 42 U.S.C. § 1983.

### 2. Failure to Summon Medical Care

23

Claim 5 alleges that the County Defendants, among others, violated California Government Code § 845.6 by failing to summon medical care for Gillis. The County Defendants move to dismiss Claim 5 against the County Defendants.

Under California Government Code § 845.6, a public entity or public employee is generally not "liable for injury proximately caused by the failure of the employee to furnish or obtain medical care for a prisoner in his [or her] custody." Cal. Gov't Code § 845.6. However, a public entity or public employee is liable for an injury proximately caused to a prisoner where: (1) "the employee is acting within the scope of his [or her] employment," (2) "the employee knows or has reason to know that the prisoner is in need of immediate medical care," and (3) "he [or she] fails to take reasonable action to summon such medical care." *Id*. Prison officials may also be liable for their employees' failure to summon medical care under California Government Code § 845.6 for negligent supervision and training as to when to summon medical care. *See Resendiz v. Cty. of Monterey*, 2015 WL 3988495, at *8 (N.D. Cal. June 30, 2015) ("[T]he Court concludes that Plaintiffs may state claims for negligent supervision and wrongful death pursuant to Cal. Gov't Code § 845.6."). However, once an inmate is receiving medical care, § 845.6 does not create a duty to provide adequate or appropriate care. *Watson v. California*, 21 Cal. App. 4th 836, 841–843 (1993).

The County Defendants argue that Plaintiffs have failed to state a claim for failure to summon medical care as to the County Defendants because the "County Defendants summoned care within a few minutes of Ms. Gillis' arrival at the jail" and "Plaintiffs' claims concern the quality of care, not whether such was summoned." ECF No. 50, at 13–14. Specifically, the County Defendants state in their reply brief that "[w]hat is not pointed out [in the complaint] is that Ms. Gillis was placed in a safety cell at 8:13 a.m., because of her combative actions, but by 8:15 a.m. she received medical contact and was timely assessed or observed thereafter." ECF No. 71, at 3. The County Defendants also argue that "Plaintiffs' own pleading" demonstrates that medical care was summoned because Dr. Fithian was informed of Gillis's condition after 28 hours and because

24

1    nursing staff heard Gillis's cries for help while Gillis was incarcerated. ECF No. 50, at 13 (citing

2    Compl. ¶¶ 64, 65, 67).

3          However, on a motion to dismiss the Court must "accept factual allegations in the

4    complaint as true and construe the pleadings in the light most favorable to the nonmoving party."

5    *Manzarek*, 519 F.3d at 1031. Thus, in deciding the instant motion the Court cannot consider the

6    County Defendants' assertion that Gillis received "medical contact" at 8:15 a.m. on December 4,

7    2015. *See Lee v. City of Los Angeles*, 250 F.3d 668, 688 (9th Cir. 2001) ("As a general rule, a

8    district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6)

9    motion.") (internal quotation marks omitted).

10         Instead, the Court must consider the facts only as alleged in Plaintiffs' complaint. The

11   complaint alleges specifically that "Defendants failed to conduct any health screenings" after

12   Gillis was booked and placed in a safety cell "for the next twenty-eight (28) hours until she was

13   found nearly unconscious and covered in feces." Compl. ¶¶ 1, 115. Plaintiffs also allege that

14   "Defendants failed to evaluate, diagnose and treat Ms. Gillis' injuries related to her arrest and also

15   failed to timely and appropriately respond to Ms. Gillis' obvious signs of medical distress over a

16   twenty-eight (28) hour period while she was locked in a safety cell with no medical care or

17   treatment despite her clear need for medical attention." *Id.* ¶ 115.

18         Although medical care was summoned after 28 hours, when Gillis was found almost

19   unconscious and covered in feces, the complaint alleges that Gillis had a "clear need for medical

20   attention" at the time she was booked. Compl. ¶ 61. A 28-hour delay in summoning medical care

21   is neither "immediate" nor "reasonable," Cal. Gov't Code § 845.6, and thus is not sufficient to

22   fulfill Defendant's duty under § 845.6. *See Pajas*, 2016 WL 3648686, at *14 (denying motion to

23   dismiss because "Plaintiffs have alleged that . . . Decedent was in obvious physical distress, and

24   that [the defendant] nevertheless did not summon medical care for four hours.").

25         In short, the County Defendants' argument that timely medical care was in fact summoned

26   is inconsistent with the facts alleged in the complaint. "Taking these allegations as true," as the

27                                                25

28   ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY
     DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO
     DISMISS

Court must on a motion to dismiss, the Court finds that the complaint sufficiently alleges that the County Defendants did not summon medical care despite Gillis's obvious need. *Bank of Sacramento v. Stewart Title Guar. Co.*, 462 F. App'x 766 (9th Cir. 2011) (unpublished).

For this reason, the County Defendants' citation to *Pajas v. County of Monterey*, 2016 WL 3648686, at *23, is inapposite. As Plaintiffs point out in their opposition to the County Defendants' motion to dismiss, in *Pajas* the complaint alleged that within 5 minutes of the decedent's arrival at the jail, "CFMG—the County's medical care provider—performed an 'Intake Triage Assessment' of Decedent at 7:00 p.m." and that at that time, the decedent was "given a series of medications to be taken throughout the following days." *Id.* For that reason, the Court in *Pajas* agreed with the defendants' argument that the complaint showed that the defendants had in fact summoned medical care. *See also Estate of Prasad ex rel. Prasad v. Cty. of Sutter*, 958 F. Supp. 2d 1101, 1117 (E.D. Cal. 2013) (dismissing claim for failure to summon medical care because the decedent "was 'already' or 'concurrently' under medical supervision when observed by the[] Defendants."). In the instant case, in contrast, the complaint specifically alleges that "Defendants failed to conduct any health screenings" for Gillis from the time Gillis was booked until she was found nearly unconscious and covered in feces 28 hours later. Compl. ¶ 115.

Additionally, although the complaint alleges that Defendant Edwards and nursing staff also heard Gillis's cries for help, this alone does not indicate that the County Defendants fulfilled their duty to summon medical care. Even though medical staff were present at the jail and heard Gillis's cries for help, this did not discharge the County's Defendants' duty to at least "call[] a doctor or other trained health care provider to examine a prisoner." *Johnson v. Cty. of Los Angeles*, 143 Cal. App. 3d 298, 317 (1983). Thus, Plaintiffs have sufficiently alleged that the County Defendants "fail[ed] to take reasonable action to summon . . . medical care." California Government Code § 845.6.

With respect to the County and Bernal, the County Defendants argue that Plaintiffs' complaint contains no "allegations that either the County of Monterey or Sheriff Bernal were

26

aware or directly involved at this stage of Ms. Gillis' confinement, either by action or omission."
ECF No. 50, at 13. As to the County, however, § 845.6 provides that a "public entity" is liable for
a failure to summon medical care by an "employee [who] is acting within the scope of his [or her]
employment." California Government Code § 845.6; *see also* California Government Code §
815.2 ("A public entity is liable for injury proximately caused by an act or omission of an
employee of the public entity within the scope of his employment if the act or omission would,
apart from this section, have given rise to a cause of action against that employee or his personal
representative."). The complaint alleges, and the County Defendants do not contest, that the
County Officers who failed to summon medical care were acting within the scope of their
employment. Compl. ¶ 116.

As to Bernal, as discussed above, prison officials may be liable for their employees' failure
to summon medical care. California Government Code § 845.6 permits claims against prison
officials for negligent supervision and training as to when to summon medical care. *See Pajas*,
2016 WL 3648686, at *22; *Resendiz*, 2015 WL 3988495, at *8 ("[T]he Court concludes that
Plaintiffs may state claims for negligent supervision and wrongful death pursuant to Cal. Gov't
Code § 845.6."). As discussed below with regards to Claim 7, the Court finds that Plaintiffs have
adequately stated a claim against Bernal for negligent supervision, training, hiring, and retention
related to jail employees' actions, including jail employees' failure to summon medical care.
Therefore, the Court concludes that Plaintiffs have also stated a claim against Bernal for failure to
summon medical care (Claim 5).

The Court thus DENIES Plaintiffs' motion to dismiss the claim for failure to summon
medical care (Claim 5) against the County Defendants.

### 3. Claim 7: Negligent Supervision, Training, Hiring, and Retention

Claim 7 alleges that the County and Bernal are liable for negligent hiring, supervision,
training, or retention. The County Defendants move to dismiss Claim 7 as to the County and
Bernal on the grounds that the County and Bernal have discretionary act immunity under

27

California Government Code § 820.2 and California Government Code § 815.2.

California Government Code § 820.2 provides that "[e]xcept as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." California Government Code § 815.2 provides that "[e]xcept as otherwise provided by statute, a public entity is not liable for an injury resulting from an act or omission of an employee of the public entity where the employee is immune from liability." Thus, if Bernal has immunity under § 820.2 for the negligent supervision, hiring, and retention claim, then the County has immunity under § 815.2 for the same claim.

The County Defendants argue that Bernal has discretionary act immunity for the negligent supervision, hiring, and retention claim because "[t]he funding, type of program, how a program will be designed, how the policy/practices fit or are suited to carry out welfare and security and political goals, are highly discretionary and at times only to be made by the Sheriff." ECF No. 50, at 15.

However, § 820.2 provides discretionary act immunity "[e]xcept as otherwise provided by statute." One such exception to § 820.2's grant of immunity is California Government Code § 845.6, which permits claims against prison officials, including sheriffs, for negligent supervision and training. *See Pajas*, 2016 WL 3648686, at *22; *Estate of Claypole v. County of San Mateo*, 2014 WL 5100696, at *25 (N.D. Cal. Oct. 9, 2014) ("[T]he Court concludes that Plaintiff's claims [against the County Defendants, including the sheriff] are viable to the extent they are based upon the County's negligence in supervising and training its employees regarding the furnishing of mental health care."); *Resendiz*, 2015 WL 3988495, at *8 ("[T]he Court concludes that Plaintiffs may state claims for negligent supervision and wrongful death pursuant to Cal. Gov't Code § 845.6."). Thus, § 820.2 does not provide immunity for Bernal for the purposes of Plaintiff's negligent supervision claim.

Additionally, even if § 820.2 did apply to Bernal, Bernal's actions in the instant case were

28

ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO DISMISS

not discretionary. Since April 2015, Bernal has been under a court-ordered preliminary injunction to remedy the deficient policies at issue in the instant case. *Hernandez v. Cty. of Monterey*, 110 F. Supp. 3d 929, 949-50 (N.D. Cal. 2015). In light of this preliminary injunction, Bernal does not have discretion to determine "how the policy/practices fit or are suited to carry out welfare and security and political goals." ECF No. 50, at 15. Instead, pursuant to the terms of the preliminary injunction, Bernal must develop and file a plan including the following elements:

> a. Medical staff shall timely conduct the initial evaluation to determine if an inmate is intoxicated and/or suffering from withdrawal or at high risk for withdrawal;
>
> b. Medical staff shall make the decision on who should be placed in a sobering cell and who should be transferred to the hospital to be treated for possible or actual withdrawal;
>
> c. Medical providers (physicians, physicians assistants, and/or nurse practitioners) shall be timely involved in assessing and treating inmates potentially undergoing withdrawal, and non-provider medical staff shall timely refer to providers those inmates undergoing withdrawals when clinically indicated;
>
> d. Detoxifying inmates shall be adequately monitored using the CIWA protocol or equivalent validated monitoring protocol, shall receive pharmacological treatment as indicated and be appropriately housed based on their clinical conditions;
>
> e. Defendants shall develop separate treatment protocols for opiate, alcohol and benzodiazepine withdrawal . . . . Compl. ¶ 51.

Despite this preliminary injunction, the complaint alleges that Bernal and the County still have unconstitutionally deficient policies in effect and that these policies led to Gillis's death. Thus, the Court rejects the County Defendants' argument that Bernal has "discretion" to ignore a court-

United States District Court
Northern District of California

ordered preliminary injunction.

Because Bernal does not have discretionary act immunity under § 802.2, the County does not have immunity under § 815.2. *See* California Government Code § 815.2 (providing immunity to a "public entity where the employee is immune from liability.").

For these reasons, the Court DENIES the County Defendants' motion to dismiss the claim for negligent supervision, training, hiring, and retention (Claim 7) against the County and Bernal.

### 4. Claim 10: Wrongful Death

Claim 10 alleges that the County Defendants caused Gillis's wrongful death because the County Defendants failed to summon medical care and "showed a deliberate indifference to the medical needs of Ms. Gillis." Compl. ¶ 151–52. The County Defendants move to dismiss this claim as to the County Defendants on the grounds that "Plaintiffs have not set forth any statutory basis for liability" against the County Defendants and that the County Defendants cannot be held liable for failure to summon medical care under § 845.6. ECF No. 50, at 15.

However, as the County Defendants recognize, Plaintiffs' claim for wrongful death is based on Plaintiffs' claim for failure to summon medical care under California Civil Code § 845.6, as well as Plaintiffs' claim for deliberate indifference in violation of 42 U.S.C. § 1983. As discussed above, the Court finds that Plaintiffs have sufficiently alleged a claim for violation of § 1983 and a claim for failure to summon medical care under § 845.6 against each of the County Defendants. Both § 1983 and § 845.6 can form the basis of a claim for wrongful death. *See Estate of Prasad*, 958 F. Supp. 2d at 1118 ("Here, Plaintiffs allege that each of the [defendants] were deliberately indifferent to [the decedent's] serious medical needs, and that their deliberate indifference caused [the decedent's] preventable death. These allegations suffice to state a claim for wrongful death."); *see also Pajas*, 2016 WL 3648686, at *30 ("Plaintiffs argue, and the . . . Defendants do not dispute, that a claim for wrongful death may be premised on deliberate indifference to medical needs."); *Resendiz*, 2015 WL 3988495, at *8 ("[T]he Court concludes that Plaintiffs may state claims for . . .wrongful death pursuant to Cal. Gov't Code § 845.6."). Thus, §

30

845.6 and § 1983 are adequate statutory bases for Plaintiffs' wrongful death claim.

For these reasons, the Court DENIES the County Defendants' motion to dismiss the claim for wrongful death (Claim 10) against the County Defendants.

### 5. Claim 11: Negligence

Claim 11 alleges that the County Defendants were negligent in "failing to provide [Gillis] evaluation or treatment related to her injuries sustained at the time of her arrest, failing to appropriately assess and evaluate her medical needs, ignoring her repeated requests for help, failing to address obvious signs of medical distress, failing to provide appropriate medical treatment, failing to adopt the minimum policies, procedures, and training necessary to ensure identification or response to medical emergencies, and ignoring the duties of medical staff to treat and monitor her drug detoxification." Compl. ¶ 160. The County Defendants move to dismiss this claim as to the County Defendants on the grounds that "Plaintiffs fail to single out or identify the various Defendants, their respective duties, or alleged wrongful acts, or identify what standards and procedures were not in place or not used." ECF No. 50, at 6. In arguing for dismissal of the negligence claim, the County Defendants also incorporate their arguments for dismissal of all other claims against the County Defendants.

As discussed above, Plaintiffs have adequately alleged the policies, procedures, actions, and omissions that allegedly violated the constitution and violated the County Defendants' duty to summon medical care. These same policies, procedures, actions, and omissions in failing to summon medical care may also form the basis of a negligence claim against the County Defendants. *See, e.g.*, *Pajas*, 2016 WL 3648686, at *30–31 ("Plaintiffs may bring a claim for negligence against the County to the extent the negligence claim is based upon a violation of Section 845.6 for failure to summon medical care.").

For these reasons, the Court DENIES the County Defendants' motion to dismiss the negligence claim (Claim 11) against the County Defendants.

### C. City's Motion to Dismiss

31

The City includes Marina City and Does 1–25. The City moves to dismiss all claims against the City and Does 1–25, who are unidentified "employees, agents, servants, and/or contractors of Defendant MARINA CITY . . . ." Compl. ¶ 33. These claims are Claim 1 (42 U.S.C. § 1983 claim for excessive force), Claim 3 (§ 1983 claim for failure to protect), Claim 4 (§ 1983 claim for deprivation of substantive due process rights), Claim 5 (failure to summon medical care), Claim 7 (negligent supervision), Claim 8 (violation of the Bane Act, California Civil Code § 52.1), Claim 9 (battery), and Claim 11 (negligence).

The City argues that these claims should be dismissed for three reasons. First, as to Claim 5, Claim 7, Claim 8, Claim 9, and Claim 11, each of which are California state law claims, the City argues that Plaintiffs have not sufficiently alleged that the City can be held liable for the acts of the CSU Officers who arrested Gillis.

Second, the City argues that Does 1–25, who are unidentified employees or agents of the City, should be dismissed because pleading Doe Defendants is improper in federal court and that "[n]o City employees were involved in the arrest, detention, and custody of Gillis at the County Jail." ECF No. 44, at 11.

Third, as to Claim 1, Claim 3, and Claim 4, each of which arises under 42 U.S.C. § 1983, the City argues that Plaintiffs have not sufficiently alleged that Gillis's constitutional rights were violated because of a City policy as required by *Monell v. Dep't. Soc. Servs. of City of New York*, 436 U.S. 658, 690 (1978). The Court addresses each of these arguments in turn.

### 1. State Law Claims

The City moves to dismiss all five state law claims against the City, specifically Claim 5 (failure to summon medical care); Claim 7 (negligent supervision, training, hiring, and retention); Claim 8 (violation of the Bane Act); Claim 9 (battery); and Claim 11 (negligence) (collectively, "state law claims"). The City moves to dismiss each of these claims on the same ground: that the complaint does not contain allegations showing that the City is vicariously liable for the actions of CSU Officers Leland, Andrada, and Peliova, who arrested Gillis and transported her to the

32

Monterey County Jail. As discussed below, the Court finds that the City is not subject to employee liability because the complaint alleges that the CSU Officers were independent contractors, and the complaint does not sufficiently allege that the City is subject to independent contractor liability.

As the City points out, "[e]xcept as otherwise provided by statute . . . [a] public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person." California Government Code § 815(a); *see also Green Valley Landowners Ass'n v. City of Vallejo*, 241 Cal. App. 4th 425, 441–42 (2015) ("It is a well-settled rule that there is no common law governmental tort liability in California."); *Gant v. Cty. of Los Angeles*, 772 F.3d 608, 623 (9th Cir. 2014) (discussing public entity immunity in the context of a Bane Act claim). Therefore, Plaintiffs can sufficiently allege their state law claims only if Plaintiffs can point to some statute that provides for liability.

The only statute mentioned in the Plaintiffs' complaint in reference to the state law claims against the City is California Government Code § 845.6, which is mentioned only in relation to Claim 5. As discussed above, § 845.6 provides that a public entity can be liable for an employee's failure to summon medical care if the "employee [was] acting within the scope of his employment." Similarly, although the complaint does not address the issue, the City acknowledges that under California Government Code § 815.2, "[a] public entity is liable for injury proximately caused by an act or omission of an employee of the public entity within the scope of his employment if the act or omission would, apart from this section, have given rise to a cause of action against that employee or his personal representative."

However, as Plaintiffs' complaint makes clear, the CSU Officers were not employees of the City. *See Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1133 (9th Cir. 2006) (holding that the Trustees of California State University "are an arm of the state that can properly lay claim to sovereign immunity"). Instead, the complaint alleges that "Marina City at all relevant times *contracted* with Defendant BOARD OF TRUSTEES OF THE CALIFORNIA STATE

UNIVERSITY to provide police services for Marina City." Compl. ¶ 22 (emphasis added). The City's motion to dismiss clarifies that on the day of Gillis's arrest, the City of Marina Police Department was undergoing an annual inspection from 7:00 a.m. to 1:00 p.m. and that "[t]he City had reached an agreement with CSUMB that CSUMB would provide police services within the City of Marina city limits for the duration of the inspection." ECF No. 44, at 4. Thus, taking the complaint in the light most favorable to the Plaintiffs, the complaint alleges at most that the CSU Officers were independent contractors of the City, and not employees. Therefore, because the CSU Officers were not employees of the City, the City cannot be held liable for their actions under California Government Code § 815.2 or § 845.6.

There is another provision of the California Government Code, § 815.4, which provides for liability against public entities for the actions of independent contractors "to the same extent that the public entity would be subject to such liability if it were a private person." However, Plaintiffs have not cited this provision in their complaint or any of their briefs. Additionally, § 815.4 does not allow for liability against public entities for all actions of independent contractors, but instead allows for liability only if "the public entity would be subject to such liability if it were a private person." The "general rule" in California is that "the employer of an independent contractor is not liable for physical harm caused to another by an act or omission of the contractor or his servants." *McCarty v. State of California Dep't of Transp.*, 164 Cal. App. 4th 955, 970, 79 Cal. Rptr. 3d 777, 787 (2008). Although this general rule is "subject to numerous exceptions," *id.*, a plaintiff does not state a claim if the plaintiff fails to identify an exception relevant to the plaintiff's claims. *See Wilson v. City of Hawthorne*, 2003 WL 253932, at *2 n.6 (Cal. Ct. App. Feb. 6, 2003) (unpublished) [2] (affirming dismissal of complaint because, although "the general rule that a principal is not liable for the torts of an independent contractor is subject to . . . many exceptions,"

---

[2] The *Wilson* opinion is unpublished and is therefore not precedent under the California Rule of Court 8.1115. However, the Court may "may nonetheless rely on the unpublished opinion[] . . . to 'lend support'" to the idea that the Court's conclusion "accurately represents California law." *Emp'rs Ins. of Wausau v. Granite State Ins. Co.*, 330 F.3d 1214, 1220 n. 8 (9th Cir. 2003).

34

Case No. 16-CV-06672-LHK
ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY
DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO
DISMISS

the plaintiff did not "identify which of the exceptions to nonliability would apply here."); *see also Mayfield v. Cty. of Merced*, 2014 WL 2574791, at *8 (E.D. Cal. June 9, 2014), *report and recommendation adopted*, 2014 WL 3401177 (E.D. Cal. July 10, 2014) (granting a motion to dismiss because the plaintiff's "complaint does not contain any factual allegations to establish vicarious liability predicated on the conduct of an independent contractor.); *Stanley v. Bobo Const., Inc.*, 2014 WL 1400957, at *3 (E.D. Cal. Apr. 10, 2014) (same).

As in the cases cited above, Plaintiffs do not identify any exception to the general rule of nonliability for the acts of independent contractors that might be applicable in this case. California Government Code § 815.4; *see also Lawson v. Superior Court*, 180 Cal. App. 4th 1372, 1397 (2010) ("to succeed in predicating liability on Government Code section 815.4, [the plaintiff[ would have to establish that the State would be liable for [an independent contractor's] acts or omissions if the State were a private person."). Therefore, Plaintiffs complaint fails to state a claim that the City is liable for the actions of CSU Officers under § 815.4.

In short, the only statute that the Plaintiffs cite in their complaint, § 845.6, is inapplicable because the CSU Officers were independent contractors rather than employees. Although § 815.4 provides that public entities can be liable for the actions of independent contractors in some circumstances, Plaintiffs have not alleged that § 815.4 applies to the instant case or explained how the City could be liable for the actions of CSU Officers "if [the City] were a private person" as required by § 815.4. Therefore, Plaintiffs have made no allegations that could overcome the City's immunity for Claim 5, Claim 7, Claim 9, and Claim 11.

For these reasons, the Court GRANTS the City's motion to dismiss Claim 5, Claim 7, Claim 9, and Claim 11. Because the Court concludes that amending these claims would not necessarily be futile, the Court GRANTS Plaintiffs leave to amend. *See Lopez*, 203 F.3d at 1130 (when dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts").

35

### 2. Does 1–25

The City also moves to dismiss Does 1–25 on the grounds that pleading Doe Defendants is improper in federal court and that "[n]o City employees were involved in the arrest, detention, and custody of Gillis at the County Jail." ECF No. 44, at 11.

In the complaint, Plaintiffs make no specific allegations against Does 1–25, and the allegations that Plaintiffs do make are contradictory. For example, Plaintiffs allege both that Does 1–25 "and each of them, are and were employees, agents, servants and/or contractors of Defendant MARINA CITY whose actions and inactions caused or contributed to the negligent acts claimed herein" and that Does 1–25 "and each of them, was responsible for the hiring, screening, training, retention, supervision, discipline, counseling and control of the police department employees, agents, servants and/or contractors involved in the conduct alleged herein." Compl. ¶ 33. The complaint contains no allegations about any particular action that any of Does 1–25 took. Indeed, the "Facts" section of the complaint contains no reference at all to Does 1–25. *See* Compl. ¶¶ 44-70. Furthermore, in response to the City's argument that no "City officers were present at the time of the arrest," Plaintiffs respond only by alleging that the CSU Officers were present at the scene as agents of the City. ECF No. 44, at 1.

In short, the complaint provides no information about Does 1–25 other than the general allegations that they committed wrongdoing and their actions can be attributed to the City, and Plaintiffs' opposition appears to concede that there were no City Officers involved in the alleged incidents other than the CSU Officers. Thus, the complaint does not "contain sufficient allegations of underlying facts to give fair notice and to enable" the City "to defend itself effectively" from the allegations against Does 1-25. *AE ex rel. Hernandez*, 666 F.3d at 637 (quoting *Starr v. Baca*, 652 F.3d 1202 (9th Cir. 2011)). The Court is also mindful that "[a]s a general rule, the use of "John Doe" to identify a defendant is not favored." *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980). Therefore, the Court DISMISSES Does 1–25 without prejudice.

### 3. Claims Under 42 U.S.C. § 1983

United States District Court
Northern District of California

1    The City also moves to dismiss all three claims under 42 U.S.C. § 1983 brought against the

2    City. Claim 1 is for excessive force in violation of the Fourth Amendment and § 1983. Claim 3 is

3    for failure to protect from harm in violation of the Fourteenth Amendment and § 1983. Claim 4 is

4    for deprivation of substantive due process in violation of the Fourteenth Amendment and § 1983.

5    As the factual basis for these claims, the complaint alleges that when arresting Gillis, CSU

6    Officers Leland, Andrada, and Peliova "tripp[ed] [Gillis] by both feet and caus[ed] her to fall to

7    the ground," "handcuff[ed] Ms. Gillis and plac[ed] her in the police vehicle" in a way that caused

8    "severe lacerations to her wrists," and failed to provide immediate medical care to treat these

9    injuries. Compl. ¶¶ 73, 95–97.

10    However, under *Monell v. Department of Social Services of the City of New York*, 436 U.S.

11    658, 691 (1987), a municipality such as the City is not liable under § 1983 unless "official

12    municipal policy of some nature caused a constitutional tort." *Id.* at 691. More specifically, "it is

13    when execution of a government's policy or custom, whether made by its lawmakers or by those

14    whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the

15    government as an entity is responsible under § 1983." *Id.* at 694. "To state a *Monell* claim, a

16    plaintiff must establish: (1) that the plaintiff possessed a constitutional right of which he was

17    deprived; (2) that the municipality had a policy, custom, or practice; (3) that the policy, custom, or

18    practice amounted to deliberate indifference to the plaintiff's constitutional rights; and (4) that the

19    policy, custom, or practice was the moving force behind the constitutional violation." *Sternberg v.*

20    *Town of Danville*, 2015 WL 9024340, at *3 (N.D. Cal. Dec. 16, 2015); *see also Dougherty v. City*

21    *of Covina*, 654 F.3d 892, 900 (9th Cir. 2011) (outlining these factors).

22    In the instant case, the complaint contains only a single mention of a policy on the part of

23    the City. Specifically, under Claim 1, the complaint alleges that "[t]he conduct complained of

24    herein was undertaken pursuant to the policies, practices, and customs of the City of Marina." *Id.* ¶

25    72. The complaint does not specify what these policies, practices, and customs were. Nor does the

26    complaint allege that these policies, practices and customs amounted to deliberate indifference to

27    37

28    ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY
DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO
DISMISS

Gillis's constitutional rights. Finally, the complaint does not sufficiently allege that the policy, custom, or practice was the moving force behind the constitutional violation. Indeed, the allegations in the complaint give strong reason to doubt that the CSU Officers were acting pursuant to the City's policies, customs, and practices because the CSU Officers were only temporary independent contractors rather than employees of the police department. Compl. ¶ 22.

Thus, Plaintiff's complaint does not sufficiently plead a *Monell* claim against the City. Instead, the complaint "simply recite[s] the elements of a cause of action" and does not "contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *AE ex rel. Hernandez*, 666 F.3d at 637 ("This standard applies to *Monell* claims . . . ."); *see also Sternberg*, 2015 WL 9024340, at *5 (N.D. Cal. Dec. 16, 2015) (dismissing complaint that "simply allege[d]: (1) the existence of such a pattern or practice, (2) that defendants had notice, and (3) that defendants failed to adequately respond.").

For these reasons, the Court GRANTS the City's motion to dismiss Claim 1, Claim 3, and Claim 4. Because the Court concludes that amending these claims would not necessarily be futile, the Court GRANTS Plaintiffs leave to amend. *See Lopez*, 203 F.3d at 1130.

## IV. CONCLUSION

For the foregoing reasons, the County DENIES the County Defendants' motion to strike. The Court GRANTS with prejudice the County Defendants' motion to dismiss Claim 6 (medical malpractice) against the County. The Court otherwise DENIES the County Defendants' motion to dismiss. The Court GRANTS the City's motion to dismiss with leave to amend.

Should Plaintiffs elect to file an amended complaint curing the deficiencies identified herein, Plaintiffs shall do so within 30 days. Failure to file an amended complaint within 30 days or failure to cure the deficiencies identified in this Order will result in dismissal with prejudice of the claims dismissed in this Order. Plaintiffs may not add new causes of actions or parties without leave of the Court or stipulation of the parties pursuant to Federal Rule of Civil Procedure 15.

Case No. 16-CV-06672-LHK
ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO DISMISS

**IT IS SO ORDERED.**

Dated: May 26, 2017

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

Case No. 16-CV-06672-LHK
ORDER DENYING MOTION TO STRIKE, GRANTING IN PART AND DENYING IN PART COUNTY
DEFENDANTS' MOTION TO DISMISS, AND GRANTING DEFENDANT MARINA CITY'S MOTION TO
DISMISS