| | |
|---|---|
| 1 | CHARLES J. McKEE, SBN 152458 |
| | County Counsel |
| 2 | IRVEN L. GRANT, SBN 068950 |
| | Deputy County Counsel |
| 3 | County of Monterey |
| | 168 West Alisal Street, Third Floor |
| 4 | Salinas, California 93901-2653 |
| | Telephone: (831) 755-5045 |
| 5 | Facsimile: (831) 755-5283 |
| | granti@co.monterey.ca.us |
| 6 | |
| 7 | Attorneys for Defendants COUNTY OF MONTEREY, SHERIFF |
| | STEVEL BERNAL, DEPUTY J. MENDOZA, OFFICER P. |
| 8 | SANCHEZ, DEPUTY WONG, and DEPUTY DOUGLAS RAARUP |

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Jose Division

| | |
|---|---|
| BRANDON VILLARREAL, a minor, by and through his guardian ad litem, DONALD VILLARREAL and JAMES GREGORY, individually and as the Successor in Interest of the Estate of Larra Ann Gillis,<br><br>Plaintiffs,<br><br>vs.<br><br>COUNTY OF MONTEREY; SHERIFF STEVE BERNAL, in his individual and official capacity, DEPUTY J. MENDOZA; OFFICER P. SANCHEZ; DEPUTY WONG; OFFICER ANNA ROCAMORA; DEPUTY DOUGLAS RAARUP; CITY OF MARINA; BOARD OF TRUSTEES OF THE CALIFORNIA STATE UNIVERSITY; OFFICER ROBIN LELAND; CORPORAL CAROLYN PELIOVA; CORPORAL DANIEL ANDRADA; CALIFORNIA FORENSIC MEDICAL GROUP; TAYLOR FITHIAN, M.D.; LORI EDWARDS, R.N. and DOES 1 to 100, inclusive,<br><br>Defendants. | CASE NO. 16-cv-06672 LHK<br><br>DECLARATION OF JENNIFER MENDOZA<br><br>IN SUPPORT OF COUNTY OF MONTEREY<br><br>DEFENDANTS' MOTION FOR SUMMARY<br><br>JUDGMENT |

1

I, Jennifer Mendoza, do hereby declare:

1. I am over the age of eighteen and a resident of the State of California. I know of the matters set forth herein of my own personal knowledge, and if called upon to testify as a witness could and would competently testify thereto. I am a defendant in the above-referenced action.

2. I have been employed with the County of Monterey since 3/2005. I have served in the following positions: Deputy Sheriff – Corrections Operations Bureau, Deputy Sheriff – Enforcement Operations Bureau, and District Attorney Investigator. I also worked as a Field Training Officer in the receiving block of the jail in the 2008 to 2009 time frame.

3. While employed with the Office of the Sheriff, I received at least biannual training on, among other topics, custody procedures, care and safety concerns for inmates, policies and procedures on services for inmates, including classification and housing, food and drink, medical care, identifying signs of immediate medical and mental health needs of inmates, and emergency medical response. In addition, we routinely received training on updates on all policy and procedure changes, and after the *Hernandez* litigation settlement parameters were outlined, we received updated information about custody procedures and protocols. I recall this with specificity because, in order to comply with then increased jail staffing, I was called away from my Patrol assignment to work at the jail in the last quarter of 2015. By December 2015, CFMG provided 24/7, around the clock medical personnel assigned in the booking area to assess and provide medical care to inmates, as appropriate. A nurse was stationed in the booking area for Intake assessment and for care and treatment of inmates in the booking area, including Ms. Gillis in the safety cell, at all times in December 2015.

4. During my years in service at the Monterey County Jail, and in particular in the booking area that includes the safety cell where Laura Gillis was housed in December 2015, but also in other areas of the jail where she was housed in August, September,

2

and October of 2015, inmates were provided food and water regularly, and also could be provided water on request. In 2015, it was not our practice to record every instance of food and water being provided in the Safety Cell Log, but instead to note in the 24 Hour log if the offers of food were refused. For this reason, the Safety Cell Log for Ms. Gillis for December 4-5, 2015 does not include a written record of every time food and water were offered, provided, or refused. My best recollection is that food and water were indeed provided and offered at the regularly scheduled intervals, and were accepted by Ms. Gillis, unless otherwise noted on the 24 Hour log.

5. As set forth in the Declaration of Captain Bass filed herewith, by December 1, 2015, the *Hernandez* protocols were largely in place, and medical staff was available in the booking area at all times. Therefore, as a custody officer, I deferred to the CFMG medical staff on medical matters related to inmates. In the event of a concern about an immediate serious medical need, however, we were each authorized to call 911 and arrange for hospital transport, even without medical staff input. I never had such a concern about Ms. Gillis when I was on duty on December 4 or 5, 2015.

6. In December 2015, I was familiar with Ms. Gillis, as an inmate, from her prior incarcerations. I had encountered her on eight to ten prior incarcerations. I was assigned and working in Jail Receiving when Ms. Gillis arrived in a CSUMB patrol vehicle. Her appearance and status on her arrival at the jail December 4, 2015 was quite similar to her behavior on these previous incarcerations, based on my experience; consistent with a person on a stimulant of some type. Ms. Gillis was combative, yelling and animate. When the CSUMB officers opened their patrol vehicle to bring her into the booking area, Ms. Gillis broke away, and ran toward the large opening to the sally port, where another vehicle had just entered. We had to chase her to prevent her escape.

7. Because of her escape attempt and her combative behavior, the receiving deputies made the decision to place Ms. Gillis in a safety cell. This was done for her safety, and the safety of other inmates and staff.

3

8. After she was in the safety cell, in the presence of a CFMG nurse, I conducted the pat-down search of Ms. Gillis. I did not notice any bruising, cuts or injuries, and there was nothing abnormal in her breathing. She continued to be combative and animated. I had no knowledge of any medical or mental health diagnoses of Ms. Gillis. This was not unusual in my experience, given HIPAA and privacy laws.

9. As reflected in the Safety Cell Log, I conducted safety checks on Ms. Gillis at least nine times during my shift on December 4, 2015. CFMG medical staff also conducted assessments, and noted on the Safety Cell Log that she should be maintained in the safety cell. Most of the time, she was standing at the door.

10. During my duty when Ms. Gillis was at the jail in December 2015, and based on my training, experience and observations, I never had any concerns about a serious medical condition that required immediate attention for Ms. Gillis. To the contrary, her condition appeared to be consistent with my observations during her previous incarcerations when I worked at the jail. If I had had any concerns about a serious medical condition for Ms. Gillis during her December 2015 stay at the jail, I would have immediately summoned CFMG medical staff, who were on site at all times.

I declare under penalty of perjury under the laws of the United States and the State of California that the foregoing is true and correct and that this declaration was executed on the date indicated below at Salinas, California.

Dated: May 29, 2018

JENNIFER MENDOZA

4

Villarreal, et al. v. County of Monterey, et al.　　　　　　　　　　Case No. 16-cv-06672 LHK